Becky J. BOND, Appellant,

v.

A. H. BELO CORPORATION and Dottie Griffith, Appellees.

No. 20175.

Court of Civil Appeals of Texas, Dallas.

June 13, 1980.

Rehearing Denied July 15, 1980.

Fred R. Brown, Brown & Brown, Garland, for appellant.

Stephen Philbin, Elizabeth Lang-Miers, Locke, Purnell, Boren, Laney & Neely, Dallas, for appellees.

Before ROBERTSON, CARVER and STOREY, JJ.

CARVER, Justice.

Our former opinion dated March 18, 1980, is withdrawn and the following opinion is substituted. The appellees' motion for rehearing is overruled.

Becky J. Bond appeals from a judgment awarding her only the actual value of certain family papers and photographs lost while in the possession of A. H. Belo Corporation and its employee Dottie Griffith. Bond's complaint on appeal is that the trial court refused to apply the correct measure of damages under which Bond would be entitled to recover the *reasonable special value of such articles to their owner taking into consideration the feelings of the owner for such property.* We agree and accordingly reverse and remand.

In August 1976, Griffith wrote a story on unwanted children which Belo published in its newspaper "The Dallas Morning News." Bond read the story and contacted Griffith. This lead to an interview at Bond's home. Bond told Griffith that she (Bond) was an adopted child who had some interesting experiences in trying to locate her biological parents and brothers. Bond exhibited a legal size envelope crammed with "pictures and birth records and newspaper clippings, copies of newspaper stories" accumulated during her search. By mutual agreement, Griffith took the envelope with her to help in writing another story. The envelope and its contents disappeared, apparently during an office shuffle at the newspaper, and the parties concede that they are irretrievable. Bond sued for damages. When Bond's suit came to trial before a jury, the trial court sustained a motion in limine to exclude evidence of "sentimental value." Bond offered into evidence interrogatories and responses of Belo relative to the principal-agent relationship between Belo and Griffith and the loss of the articles without legal excuse. Bond then called Griffith as the first live witness before the jury. During Bond's examination of Griffith, the following occurred:

Q. Were you aware at the time you took these into your possession that Becky Bond had a very special feeling for these articles?

A. She said that she had sentimental value, that they meant something to her, that she had—

MR. WOODRUFF: Your Honor, may we approach the bench?

THE COURT: You may approach the bench. (Conference at the bench among Court and counsel out of the hearing of the jury and the reporter.)

THE COURT: All right. Ladies and gentlemen, *you won't consider for any purposes whatsoever during this trial or in your deliberations the sentimental value of these articles to Becky Bond.* [Emphasis added.]

The examination of Griffith was interrupted by the noon recess at which time the parties stipulated that the actual value of the lost papers was $2,500.00 but that the "sentimental value and the special value and feelings of Becky Bond for such articles" was *greater* than the actual value. The court discharged the jury, and judgment was entered for Bond for the $2,500.00 *actual value* lost.

The statement of facts reflects proceedings outside the presence of the jury which are adequately summarized by the recitals of the trial court's judgment and which present the background necessary for our decision. The judgment recites as follows:

"At the noon recess, the Court made the following rulings:

"It is the ruling of the Court that Plaintiff may not recover the special value of such articles to her, taking into

consideration her feelings for such property.

"It is the ruling of the Court that BECKY J. BOND is not entitled to recover the sentimental value of such items:

"That the proper measure of damages in this case is the actual value to BECKY J. BOND of the papers and photographs given to DOTTIE GRIFFITH at the time and place of the loss of the papers and photographs and that she would not be entitled to recover for the sentimental value of such items, nor for the special value of such articles to her considering her feelings for such items."

That parties thereupon stipulated that such items did not have a market value and that the sentimental value is greater than the actual value of said articles to BECKY J. BOND.

*In considering the rulings of the Court, the parties then agreed* that the jury should be discharged and that the Court enter a judgment for the Plaintiff for the sum of Two Thousand Five Hundred Dollars and costs of Court, which the parties have stipulated the Court should find as being the actual value to BECKY J. BOND of the papers and photographs given to DOTTIE GRIFFITH at the time and place of the loss of the papers and photographs, excluding the sentimental value and the special value and feelings of BECKY J. BOND for such articles. The parties further agreed that these stipulations and actions were being taken so that the Plaintiff might perfect her appeal on a shortened record because *she does not agree with the measure of damages that the Court is applying in this case. * * * to which Judgment Plaintiff then and there in open Court duly excepted.* [Emphasis added.]

■ We first address a contention by Belo that the appeal should not be considered because the judgment of the trial court was entered by "consent" of both parties and both are estopped from seeking appeal. Belo urges the application of the rule set out in *Posey v. Plains Pipe Line Co.,* 39 S.W.2d 1100 (Tex.Civ.App.—Amarillo 1931, no writ) wherein it is stated:

The general rule is that a party cannot complain of a judgment or decree rendered by consent or on agreement, nor can he appeal or sue out a writ of error to have the same reviewed, even though there has been an attempt to reserve the right to appeal. It is held in Texas that a judgment by consent of parties waives all errors committed before its rendition, and they will not be noticed by the appellate court. [Citations omitted.]

39 S.W.2d at 1100–1101. We do not disagree with *Posey.* Hence, we must determine whether the judgment below was "rendered by consent" of Bond. We revert to the quoted recitals of the trial court judgment (which recitals are supported by the statement of facts) and observe that while "the parties then agreed that the jury should be discharged and that the Court enter a judgment for Plaintiff." The judgment also recites that, "she does not agree with the measure of damages that the Court is applying in this case" and, lastly, "to which Judgment Plaintiff then and there in open Court duly excepted."

Our record reflects that the courtroom proceedings commenced and concluded on June 5, 1979, while the judgment was signed and entered June 11, 1979. Tex.R. Civ.P. 11 provides: "No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." The only possible "consent," or agreement, of Bond under our record is the judgment itself as there is no signed or filed agreement and the judgment is the only "entered of record" reflection of "consent," or agreement, of either party. Nevertheless, the judgment contains Bond's recited exception to the judgment. In *Owen v. Finigan,* 381 S.W.2d 578 (Tex.Civ.App.—Eastland 1964, writ ref'd n. r. e.), the parties reached a settlement during trial; made an oral announcement thereof in open court; and entered a subsequent judgment, consistent with the settlement, which included a recit-

al that Owen excepted to the judgment and gave notice of appeal. The court rejected the argument that the judgment was entered with the "consent" of Owen and held:

> By excepting to the judgment, appellant was asserting that he was not acquiescing in the terms of the alleged settlement nor in the decision of the court. By excepting, appellant objected to all the terms of the judgment. By such action the appellant was making it known to the Court that he was not agreeing to the terms and that he was dissatisfied.

381 S.W.2d at 579. We hold that on the authority of *Owen*, Bond did not "consent" to the judgment and therefore *Posey* cannot apply to prevent the appeal.

In *Owen* it was evident that the parties' agreement, if any, related to liability under an undisputed *legal theory* and to the amount of damages under an undisputed *legal measure of damages*. In our case, we do not find an "agreement" of any kind between the parties but rather the firm imposition by the trial court of a measure of damages that the court thought was legal and a disagreement with the court by Bond. The record reflects that, prior to trial, Belo's motion in limine to exclude evidence of "sentimental" value was sustained. We have quoted the trial court's ruling and instruction to the jury as to "sentimental" value. We have also quoted the judgment containing three additional "rulings," in positive or negative terms, relating to "sentimental" value. The judgment then declares that, "In considering the rulings of the Court, the parties then agreed . . . " which can only be construed as respectful obedience to the court's multiple rulings rather than "consent." In *Haynie v. General Leasing Co.*, 538 S.W.2d 244 (Tex.Civ.App.—Dallas 1976, writ ref'd n. r. e.), it was urged that a party who had obeyed a temporary mandatory injunction should be denied an appeal. This court held that "a party's compliance with a court order does not in itself deprive him of his right of appeal." We hold that Bond's respectful obedience to the firm and repeated rulings of the trial court which denied Bond's right to recover "sentimental" value,

or to offer any evidence in support of "sentimental" value, did not constitute "consent" by Bond to a different measure of damages or to a judgment predicated on a different measure of damages, nor does it bar Bond's right to appeal the imposition of a different measure of damage by the trial court.

■ We next consider whether the measure of damages imposed by the trial court was correct or whether, as Bond contends, the correct measure of damages should include "sentimental value" of the articles to her. Belo and Griffith urge here, and apparently took the position in the trial court, that the correct measure of damages is to be found in *Crisp v. Security National Insurance Co.*, 369 S.W.2d 326 (Tex.1963), which held:

> It is a matter of common knowledge and of usual acceptation by the courts that used household goods, clothing and personal effects have no market value in the ordinary meaning of that term. They may be sold but only at considerable sacrifice which by no means represents the value of the articles to the owner. We find no recognized authority which would hold the insured to a recovery based solely on the proceeds obtainable on a second-hand market. Likewise, replacement costs do not afford a fair test. In some instances on account of obsolescence, change in style and fashion, this measure might represent an economic gain to the insured quite aside from the difficulty of application and proof. The measure of damage that should be applied in case of destruction of this kind of property is the actual worth or value of the articles to the owner for use in the condition in which they were at the time of the fire excluding any fanciful or sentimental considerations. [Citations omitted.]

369 S.W.2d at 328. We disagree. *Crisp* was a suit to recover for fire insurance and dealt only with "used household goods, clothing, and personal effects," none of which were shown to have any "sentimental" value. Bond urges that the correct

measure of damages is provided by *Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299 (Tex.1963). In *Brown* several family members resided on the premises of Frontier's drive-in theatre to serve as operators and caretakers twenty-four hours a day. The family necessarily had in their quarters all they owned in the way of personal property including many items of no value save in sentiment. Findings of negligence and proximate cause for an electrical fire that destroyed the theatre, as well as all the Brown family's possessions, established the liability of Frontier and the court addressed the appropriate damages for the loss of a variety of personal property. As to such personal property as may have its "primary value in sentiment" the court held:

> As a general rule recovery for sentimental value for personal property cannot be had in a suit for the loss of property for personal use such as wearing apparel and household goods. This rule has been applied in Texas so as to deny the recovery for sentimental value in a suit for the loss of heirlooms. However, in our opinion such is not the rule to be applied in a suit to recover for the loss or destruction of items which have their primary value in sentiment.
>
> It is a matter of common knowledge that items such as these generally have no market value which would adequately compensate their owner for their loss or destruction. Such property is not susceptible of supply and reproduction in kind, and their greater value is in sentiment and not in the market place. In such cases the most fundamental rule of damages that every wrongful injury or loss to persons or property should be adequately and reasonably compensated requires the allowance of damages in compensation for the reasonable special value of such articles to their owner taking into consideration the feelings of the owner for such property. . . . Where such special value is greater than the market value, it becomes the only criterion for the assessment of damages. [Citations omitted.]

369 S.W.2d at 304–305. In *Brown* the court also described some of the personal property reflected by the record stating:

> The law recognizes that articles of small market value of which their owner is despoiled may have a special value to him as heirlooms, and there is evidence in the record that with the exception of the coin collection and the land patent the primary value of these items to Mrs. Brown was their sentimental value. For example: the wedding veil, one of the emerald rings, the shoes and the point lace collar belonged to her grandmother; the pistol belonged to her grandfather; the watch belonged to her great grandmother; and the two slumber spreads were made by hand by her great, great, great grandmothers.

369 S.W.2d at 304. We hold that under the record, including the stipulations of the parties, the correct measure of damages is supplied by *Brown*, that is "the reasonable special value of such articles to their owner taking into consideration the feelings of the owner for such property."

There appears to be some question as to whether our record is sufficient for the absence of a proper bill of exception showing any excluded testimony and, thus, whether the exclusion of evidence was harmful in fact. We note that the record is not in dispute as to nature of the particular articles lost by Belo. Griffith described the articles in her testimony as "pictures and birth records and newspaper clippings, copies of newspaper stories." Griffith also testified that at the time the articles were delivered to her, "she [Bond] said that she had sentimental value, that they meant something to her, . . . ." Although the trial court immediately instructed the jury not to consider "sentimental value" for any purpose, the answer of the witness was not stricken and suffices, in any event, as a bill of exception. Additionally, the parties' stipulation included "that such items did not have a market value and that the sentimental value is greater than the actual value." We hold that the foregoing portions of the record are sufficient to invoke the application of *Brown* by demonstrating that the lost articles "have their primary value in sentiment."

Further, there appears to be some question as to whether the record, although raising the *Brown* measure of damages, fails to reflect by testimony, or by bill of exception, any *amount* of damages under such measure and, thus, fails to demonstrate on appeal that the error was harmful. We note that the parties' stipulations include an actual value of the lost articles at $2,500.00 and that their sentimental value was *greater*. We also note that in *Brown* the court relied upon *Shewalter v. Wood*, 183 S.W. 1127 (Mo.App.1916), as authority for the holding that "where such special value is greater than the market value, it becomes the only criterion for the assessment of damages." 369 S.W.2d at 305. In *Shewalter* the court discusses the admissible evidence when such a measure of damages is to be applied stating:

> The court did not err in refusing to allow plaintiff, in his testimony, to estimate the special value of the heirlooms to him. That is not a proper subject for opinion evidence, and such damages are to be ascertained by the jury in the light of all the facts and circumstances of the case.

183 S.W. at 1129. Thus, it appears that the *amount* of damages need not appear by testimony, or bill of exception, to properly invoke the *Brown* measure of damages or to properly preserve the issue for appeal. Indeed, *Shewalter* indicates any *amount* testimony shall be excluded. We hold that the record before us is sufficient because the stipulations of the parties show that Bond was injured by the erroneous rulings of the court in an amount "greater" than $2,500.00.

Reversed and remanded with costs assessed to Belo and Griffith.