[No. 11227-9-I. Division One. April 9, 1984.]

CLAYTON K. HIMANGO, ET AL, *Respondents*, v. PRIME
TIME BROADCASTING, INCORPORATED, *Appellant.*

*Montgomery, Purdue, Blankinship & Austin, George W. Akers, Jr., Davis, Wright, Todd, Riese & Jones, Daniel M. Waggoner,* and *Evan Schwab,* for appellant.

*Anderson, Hunter, Dewell, Baker & Collins* and *William W. Baker,* for respondents.

RINGOLD, J.—The defendant Prime Time Broadcasting, Inc. (Prime Time) appeals the judgment after a jury verdict awarding the plaintiff, Clayton Himango, damages for allegedly defamatory statements broadcast over defendant's radio station. Himango cross–appeals the court's reduction of the jury verdict. We find no error and affirm.

Clayton Himango was an Everett police officer on the vice and gambling unit at the time the incidents giving rise to this lawsuit occurred. Himango, as department representative, went to the Holiday Inn to register himself and some other officers for an interstate police conference. After registering, Himango visited the hospitality room for a few drinks.

After the hospitality room closed, Himango, with some other police officers, went to the Holiday Inn lounge. Mrs. Huntley, a Snohomish County employee who was registering participants, joined them. Himango testified that he walked Mrs. Huntley to her car after the bar closed, to discuss registering another officer for the conference.

David Huntley was waiting for his wife in the parking lot. He saw her get into her car with Himango. Huntley said that he saw Himango and Mrs. Huntley with their heads together, and Himango was "leaning on top of" Mrs. Huntley. Huntley went over to the car and told Himango to leave his wife alone. He testified that Himango kicked him, and was combative and insulting, so he hit Himango once. Himango fell to the concrete and was severely injured.

Huntley was charged with assault, and was convicted in his first trial, but the verdict was set aside by the judge because of an error in the jury instructions. A second trial ended in a mistrial; Huntley was acquitted in a third jury trial. Prime Time broadcast a story about the first jury verdict which stated in part

apparently Officer Himango had made sexual advances to Huntley's wife Mary, who was a secretary . . . [Mrs. Huntley] testified that she had been drinking with several officers and left with Himango. At that point, her husband, who was not at the conference but had stayed home to watch the children, drove up and *observed his wife and Officer Himango in a somewhat compromising position in her automobile.*

(Italics ours.)

Himango brought a defamation action, claiming that the italicized statement above was defamatory because it was not true that he was in a "compromising position." The trial court ruled that Prime Time could not refer to the results of the second or third Huntley trials. The judge ruled that Himango was not a "public official" and that to sustain the action Himango must prove negligence, not actual malice. The trial court also excluded evidence of Himango's prior sexual activity. Prime Time assigns error to these rulings.

The jury returned a verdict for Himango for $250,000. The trial court denied a motion for a new trial, but reduced the award to $70,000. Himango appeals this reduction.

## PUBLIC OFFICIAL

Prime Time first argues that the trial court incorrectly ruled as a matter of law that Himango was not a public official, and that proof of negligence, rather than actual malice, was necessary to establish Himango's claim for defamation.

Defamation actions can implicate First Amendment rights. In *New York Times Co. v. Sullivan,* 376 U.S. 254, 279, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964), the United States Supreme Court balanced the

interests of individuals in protecting their reputations against the importance of the free exchange of ideas guaranteed by the First Amendment. The Court established the rule that liability could not be imposed for statements defaming a public official concerning official conduct absent a showing of actual malice on the part of the publisher.

In defining the term "public official" the courts must use constitutional, not state law, standards. *Clawson v. Longview Pub'g Co.,* 91 Wn.2d 408, 414, 589 P.2d 1223 (1979). Two factors distinguish public and private plaintiffs: ease of access to the press, and the assumption of the risk of greater public scrutiny attendant to public life. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974). In analyzing *Gertz,* The Washington Supreme Court stated that the second factor is the more important, and that public employees "cannot expect the same degree of protection of their privacy as it relates to their work as those employed in the nonpublic sector . . . even relatively low level public employees must . . . expect a degree of public interest in the performance of their duties." *Clawson,* at 416. The actual malice standard is applicable to any aspect of a public official's life that may affect fitness for the position. *Clawson,* at 417; *Garrison v. Louisiana,* 379 U.S. 64, 13 L. Ed. 2d 125, 85 S. Ct. 209 (1964).

When officials wield general power and exercise broad discretion, the scope of the public official standard is broad. When the individual is less powerful, "the 'public official' standard fails to sweep so broadly; exposure is limited to matters more closely connected to actual job performance." *Clawson,* at 417. There are two relevant variables: the importance of the position held, and the nexus between that position and the allegedly defamatory information. *Clawson,* at 417.

Applying this 2–factor "sliding scale" to the instant case leads to the conclusion that Himango was not a public official. Himango was a patrolman who did not exercise a general influence on government affairs. The nexus between

the defamatory allegations and the official position is weak. While the statement about being seen in a "compromising position" could possibly relate to Himango's fitness to be on the vice squad, it does not relate to his official duties or to his performance of those duties. A police officer is not a public official for all times and all actions. *Tilton v. Cowles Pub'g Co.,* 76 Wn.2d 707, 716, 459 P.2d 8 (1969), *cert. denied,* 399 U.S. 927 (1970).

The trial court correctly determined that Himango was acting in his private capacity, and that the negligence standard applied to Prime Time's conduct.

## EVIDENTIARY RULINGS

Prime Time next assigns error to the trial court's exclusion of the result of Huntley's third assault trial, arguing that the result of this trial should have been admitted as evidence of the truth of the allegedly defamatory broadcast. Prime Time also argues that the trial verdict was admissible under ER 803(a)(22). Himango responds that Prime Time did not properly preserve this issue for appellate review because counsel did not make a formal offer of proof. *Mad River Orchard Co. v. Krack Corp.,* 89 Wn.2d 535, 573 P.2d 796 (1978). He also argues that the third trial was properly excluded as irrelevant because the defamation action concerned failure to use correct attribution in the broadcast, and that the subsequent jury trials are not relevant to the accuracy of the report about the first trial.

This issue is properly before this court on review. Although Prime Time did not make a formal offer of proof, the issue was fully argued in the motion in limine and the trial court was aware of the basis for Prime Time's proffered evidence. A formal offer of proof is unnecessary if the substance of the evidence was apparent from the context within which questions were asked. *See* ER 103(a)(2); *United States v. Nevitt,* 563 F.2d 406 (9th Cir. 1977); 5 K. Tegland, Wash. Prac., *Evidence* § 12, at 42 (2d ed. 1982).

Prime Time's argument that evidence of the third assault trial was admissible under ER 803(a)(22) to rebut

the effect of admitting the conviction in the first assault trial is without merit. Himango correctly points out that no objection was made at trial to admitting the evidence concerning the first assault trial. Defense counsel agreed that the result of the first trial necessarily must be admissible. The court did not make a ruling and did not rely on ER 803(a)(22). Prime Time may not make this argument for the first time on appeal. *Malstrom v. Kalland,* 62 Wn.2d 732, 384 P.2d 613 (1963).

One of the essential elements in a defamation action is proof of falsity. *Mark v. Seattle Times,* 96 Wn.2d 473, 482, 635 P.2d 1081 (1981), *cert. denied,* 457 U.S. 1124 (1982). The major argument here is whether "falsity" means that the report about the first assault trial was false, or that the behavior "being seen in a compromising position" did not occur. If the element "falsity," and the associated defense, "truth," refers to the legal proceedings that were the subject of the report, then the later trials are irrelevant. The issue for the jury would be whether the defendant negligently broadcast false statements about the legal proceedings.

Even assuming arguendo that Prime Time is correct in asserting that there was no defamation if the events as reported are true, it was not error to refuse to admit the jury verdict of the third trial. Prime Time does not claim that this jury verdict collaterally estopped Himango from arguing that he was not in a "compromising position." Himango was not a party to the criminal action and it did not resolve the issue of Himango's behavior. Thus, collateral estoppel is not applicable. *See State v. Dupard,* 93 Wn.2d 268, 609 P.2d 961 (1980).

The issue of the truth or falsity of the report that Himango was in a "compromising position" was open to be litigated in the defamation proceeding. Prime Time was allowed to present evidence that Himango was making unwanted sexual advances to Mrs. Huntley. David Huntley testified extensively, and Prime Time was free to call any other useful witnesses. The reasons for the third jury ver-

dict are unknown. It was only necessary for the jury to decide that the State did not prove the absence of self–defense beyond a reasonable doubt, and there is no specific finding on Himango's behavior. Himango was not on trial. The jury verdict in the third Huntley trial was properly excluded as irrelevant. The outcome of that case did not make it more or less probable that the claimed defamatory material was true or false. ER 401.

## EVIDENCE OF SEXUAL ACTIVITIES

The third issue concerns the trial court's exclusion of evidence of Himango's extramarital sexual activity. Prime Time argues that the testimony should have been admitted for two purposes: (1) to show that Himango did not suffer substantial damage to his reputation from the broadcast because his extramarital affair was common knowledge; and (2) to support Huntley's testimony that he observed Himango making advances toward Huntley's wife. Prime Time claims that the probative value of the evidence was not outweighed by the danger of unfair prejudice, and the evidence should not have been excluded, citing *State v. Stevenson,* 16 Wn. App. 341, 346, 555 P.2d 1004 (1976), *review denied,* 88 Wn.2d 1008 (1977). Prime Time also argues that ER 404 does not operate to exclude the testimony because character is an essential element of the charge so that proof may be made of specific instances of conduct under ER 405.

Prime Time's arguments are not persuasive. Evidence of specific acts or of a character trait is generally not admissible to show that the party acted in conformity therewith on a particular occasion. ER 404(a). *See* E. Cleary, *McCormick on Evidence* § 189, at 445 (2d ed. 1972). Such evidence may be admissible on other issues, such as damages. Comment, ER 404(a); 1 J. Wigmore, *Evidence* § 69, at 491 (3d ed. 1940); 5 K. Tegland, Wash. Prac., *Evidence* § 107, at 259 (2d ed. 1982). In the case sub judice, the trial court rejected the proffered evidence under ER 403 because the prejudice outweighed the probative value on the damages issue.

ER 403 lists several factors to be considered in

determining whether prejudice outweighs probative value in a specific case, including "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The determination of the admissibility or exclusion of evidence is within the sound discretion of the trial judge and will not be overturned on appeal unless abuse of discretion is shown. *Stevenson,* at 346. An abuse of discretion is "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Such an abuse of discretion has not been established here. The evidence of prior consensual extramarital activity is not probative on the defamation issue and does not tend to establish that Himango was forcing unwanted sexual attentions on Mrs. Huntley. The evidence may have slight value on the issue of damages, as tending to show that Himango had a reputation for extramarital sexual activity. This value is outweighed by the potential prejudice of the evidence. The trial court did not abuse its discretion in excluding the evidence.

## DAMAGES VERDICT

Himango cross–appeals the reduction of the jury verdict on damages from $250,000 to $70,000. He first contends that the trial court erred in simply ordering a reduction in damages without stating that the alternative was a new trial. RCW 4.76.030 reads that "the trial court may order a new trial . . . unless the party adversely affected shall consent to a reduction or increase of such verdict . . ." The order need not literally state that the reduction is an alternative to a new trial. Himango understood that refusal to accept the reduced award would result in a new trial. Himango argued against a new trial and signed the order reducing the award. He elected to accept the reduction and to argue the issue on appeal.

Himango next contends that under CR 59(a)(5) and

RCW 4.76.030 the court may reduce damages only when the award is so excessive as unmistakably to indicate that the verdict must have been the result of passion or prejudice. There is no evidence here of passion or prejudice according to Himango, who argues that the trial court should not have substituted its finding on damages for that of the jury.

Prime Time responds that the trial court erred in not granting a new trial based on the obvious passion and prejudice shown by excessive damages, but adds that the trial court was correct in at least reducing the amount of damages.

The standard for changing a jury verdict is set out in *James v. Robeck,* 79 Wn.2d 864, 490 P.2d 878 (1971). There, the trial court reduced the verdict in a personal injury action from $17,000 to $7,500. The Supreme Court reinstated the verdict because there was substantial evidence supporting the verdict; it was not "intrinsically so excessive as to unmistakably indicate that the award was the result of passion and prejudice." *James,* at 868. The first step in analyzing the propriety of the trial court's action is to determine whether there is substantial evidence to support the verdict. If there is not substantial evidence, the issue of excessive damages is moot. *James,* at 866.

> [T]he court should first look to the scope or range of the evidence in relation to the verdict. In those instances where the verdict is reasonably within the range of proven damages, . . . and where it can be said that the jury, in exercising its exclusive power, could believe or disbelieve some of it and weigh all of it and remain within the range of the evidence in returning the challenged verdict, then it cannot be found as a matter of law that the verdict was unmistakably so excessive or inadequate as to show that the jury had been motivated by passion or prejudice . . .

*James,* at 870–71. The court may also consider "untoward incidents of such extreme and inflammatory nature that the court's admonitions and instructions could not cure or neutralize them." *James,* at 871.

The trial judge wrote a memorandum opinion summariz-

ing his reason for reducing the verdict. He found the damages to be "greatly excessive" because there was no evidence of actual pecuniary loss, no evidence about how many people heard the broadcast, the jury's belief about impairment of reputation and standing in the community "must have been based upon speculation", the few police associates who knew of the broadcasts shared the plaintiff's indignation rather than believing the broadcasts, the evidence showed that social acquaintances were affected by the media attention and trial generally, not by the particular broadcast, and there was no credible evidence that the broadcast was malicious. The court concluded:

A damage award in the range of $5,000 to $20,000 represented an adequate award in relation to the evidence. An award in the range of $50,000 to $70,000 would have been exceedingly generous but possibly still rational. The award of $250,000 in this case simply does not seem rational, and in the opinion of the court, could only have been the product of prejudice and passion, or an unlawful attempt to award punitive damages.

The trial judge followed *James,* looking to the scope of the evidence in relation to the verdict, and concluding that the verdict was far beyond the evidence. The court's summary of the evidence is accurate. While there is a strong presumption of validity of jury verdicts, those verdicts must be supported by the evidence. *James,* at 866. The jury verdict here does not meet the initial requirement in *James* that it be supported by substantial evidence. Himango was not affected professionally, and did not claim mental or physical distress other than a general feeling of outrage at the broadcast. He testified that his wife did not believe the broadcast and that his friends and associates "stood by him." No other witnesses testified as to damages.

Although defamation damages are difficult to quantify and may necessarily involve estimation or speculation, there must be *some* evidence of damages. *Sims v. KIRO, Inc.,* 20 Wn. App. 229, 580 P.2d 642 (1978), *cert. denied,* 441 U.S. 945 (1979). Juries do not have unbridled discretion

to award damages. As noted by the Supreme Court in *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 447, 546 P.2d 81 (1976),

> juries shall be limited to awarding damages for only *actual* injuries sustained, and shall not be allowed to *presume* the existence of any damages in the absence of a finding that the statement was published with knowledge that it was false or with a reckless disregard for the truth.

The trial judge did not abuse his discretion in reducing the verdict and denying the motion for a new trial.

Accordingly, we affirm.

DURHAM, C.J., and JOHNSEN, J. Pro Tem., concur.

Review denied by Supreme Court July 24, 1984.