Steven A. LANDERS, Appellant,

v.

**MUNICIPALITY OF ANCHORAGE,**
**Appellee.**

No. S–6023.

Supreme Court of Alaska.

April 26, 1996.

Robert D. Lewis, Anchorage, for Appellant.

Stephanie Galbraith Moore, Assistant Municipal Attorney, and Richard L. McVeigh, Municipal Attorney, Anchorage, for Appellee.

Before RABINOWITZ, MATTHEWS, COMPTON, and EASTAUGH, JJ.

*OPINION*

RABINOWITZ, Justice.

## I. *INTRODUCTION*

Steven Landers appeals the superior court's ruling *in limine* excluding evidence of the sentimental and emotional value of family photographs and videotapes. We affirm this ruling, but remand for a new trial on the issue of damages for loss of the photographs and videotapes based on the standard adopted in this opinion.

## II. *FACTS AND PROCEEDINGS*

Anchorage police officers requested and were issued a search warrant after investigating an anonymous tip that Steven Landers was growing marijuana at his residence in Anchorage. State troopers and Anchorage police officers searched Landers' residence and seized a large quantity of marijuana plants, equipment used in drug production, and other personal property. Landers was ultimately convicted of misconduct involving a controlled substance. *Landers v. State*, 809 P.2d 424 (Alaska App. 1991).

During the pendency of the criminal litigation, the Municipality of Anchorage Police Department stored Landers' personal property and eventually disposed of it without notice to Landers. The items seized and disposed of included photographs and videotapes. Landers alleged that the photos were personal family pictures, pictures of girlfriends, and wedding photographs, and that the videotapes were recordings by Landers of events from his life.

Landers subsequently filed a complaint seeking damages for the items of personal property seized and disposed of by the Municipality. Landers based his request for relief on theories of inadequate bailment, trespass, and conversion, and requested injunctive relief. The Municipality filed a motion *in limine* to exclude at trial any evidence of Landers' sentimental or emotional attachment to any items of personal property disposed of by the municipality. Following a hearing, the superior court granted the motion *in limine* on the ground that sentimental or emotional attachment "is so highly

subjective as to amount to speculation." Landers then filed a petition for review with this court but the petition was denied. The matter subsequently went to trial.

During trial, the superior court discussed the status of the damages issue, stating the following:

> THE COURT: ... He does want return of his videos, pictures, letters, and such, or if they're not available, of course, their money equivalent, and monetary equivalent's fixed, right or wrong in this case, not at a hedonistic level, but at a fair market value level. Is that the shape of this case?

> MR. LEWIS: Yes, Your Honor.

> MS. GALBRAITH: Absolutely.

The court instructed the jury that if it finds "that the defendant negligently retained or disposed of an item of plaintiff's property [it] must determine ... how much money will fairly compensate the plaintiff for that item of loss." With regard to damages, the court instructed the jury that the proper measure of damages for Landers' unreturned personal property is its fair market value at the time of seizure. Fair market value was defined as "the amount a fully informed seller would receive from a fully informed buyer in a normal, open market sale." The court further instructed the jury that it "may not award damages for plaintiff's sentimental[,] emotional, or fanciful value of any property including photographs and videotapes."

The jury awarded Landers $1.00 in nominal damages for the loss of miscellaneous photographs and $25.00 in damages for the loss of five videotapes. Since the jury's total award of $771.00 was substantially less than the Municipality's prior offer of judgment, Landers was ordered to pay costs and attorney's fees. Landers now appeals.

III. *STANDARD OF REVIEW*

■ The issues presented in this case are questions of law to which this court applies its independent judgment, adopting the "rule of law that is most persuasive in light of precedent, reason, and policy[.]" *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).[1]

IV. *DISCUSSION*

A. *Did Landers waive his right to challenge the superior court's ruling on the motion in limine by failing to make an offer of proof?*

■ The Municipality argues that Landers waived his right to challenge the superior court's ruling excluding evidence of the sentimental or emotional value of photographs and videotapes because he failed to make an offer of proof. Under Alaska Rule of Evidence 103(a)(2),[2] an offer of proof is generally required to preserve error based upon a trial court's ruling excluding evidence. However, an offer of proof is not required in this case because the evidence at issue was excluded pursuant to a pre-trial ruling on a motion *in limine*.

In *Agostinho v. Fairbanks Clinic*, 821 P.2d 714 (Alaska 1991), Agostinho appealed the superior court's exclusion of evidence pursuant to its ruling on a motion for a protective order. On review, we noted that "[o]rdinarily, a party waives its right to challenge exclusion of evidence unless an offer of proof as to the substance of the evidence is made at the time the evidence is excluded." *Id.* at 717. However, we held that where the trial court had previously granted a protective order forbidding admission of the evidence at issue, it is appropriate "to look to the protective order rather than events occurring at trial to determine whether the trial court could properly forbid admission of the evidence." *Id.*

---

1. The standard of review for a trial court's decision to exclude evidence discussed in Section IV.C. below, is abuse of discretion. *Agostinho*, 821 P.2d 714, 716 n. 2 (Alaska 1991). However, the question on review in this case is whether the trial court applied the correct legal standard in the exercise of its broad discretion. This is a question of law.

2. Alaska Rule of Evidence 103(a)(2) provides that error may not be predicated upon a ruling which excludes evidence unless a substantial right of the party is affected and "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked."

■ A motion for a protective order and a motion *in limine* are functionally the same. Black's Law Dictionary 914 (5th ed. 1979). Thus, our holding in *Agostinho* applies to the present case. Based on *Agostinho,* we hold that Landers did not waive his right to challenge the superior court's ruling by failing to make an offer of proof.[3]

B. *Did Landers waive his right to challenge the superior court's ruling on the motion in limine by failing to object to certain jury instructions?*

■ Although Landers only appeals from the superior court's ruling on the motion *in limine,* the Municipality argues that this appeal also involves Jury Instructions 11, 12 and 13. Landers did not object to Jury Instruction 11, which states that the proper measure of damages for the personal property in question is the fair market value at the time of seizure. Nor did Landers object to Jury Instruction 12 which defines fair market value. Finally, Landers failed to object to Jury Instruction 13, which informed the jury that sentimental and emotional value may not be considered in awarding damages. Landers in turn argues that it was not necessary for him to object to these jury instructions because they were "the logical outcome of the court's ruling on its Motion in Limine. When the court ruled that no evidence of sentimental or emotional value would be allowed, the logical outcome of this ruling was that instructions 12 and 13 would be given."

■ Alaska Rule of Civil Procedure 51(a) requires a party to object to a jury instruction in order to preserve the issue for review.[4] And generally, in the absence of a proper objection, we will not review a jury instruction unless the giving of the challenged instruction was plain error. *Conam Alaska v. Bell Lavalin, Inc.,* 842 P.2d 148, 153 (Alaska 1992). Plain error will only be found when an obvious mistake exists such that the jury will follow an erroneous theory resulting in a miscarriage of justice. *Id.*

■ The Municipality cites us to no authority holding that a party loses his right to challenge on appeal an adverse ruling on a motion *in limine* by not subsequently objecting to a jury instruction which reflects the adverse ruling. The case relied upon by the Municipality, *State v. Dupere,* 709 P.2d 493, 498, n. 5 (Alaska 1985), is unlike the present case as there were no rulings on pre-instruction motions challenged on appeal. Similarly, *Brown v. Estate of Jonz,* 591 P.2d 532, 533–35 (Alaska 1979), cited in *Dupere,* is distinguishable because, viewing that case most favorably to the Municipality, it involved an informal, off-the-record decision by the trial court which was later reflected in the court's instructions to which, in turn, no objection was made. As we noted in *Brown,* "the trial court needs an identifiable opportunity to rule on a party's position." *Id.* at 534. Such an opportunity existed in the present case in the form of the motion *in limine.* We thus reject the Municipality's contention that Landers waived his right to appeal the ruling on the motion *in limine* by failing to object to certain of the court's jury instructions.

C. *Did the superior court err in excluding evidence of the sentimental and emotional value of photographs and videotapes?*

■ The question of whether the superior court erred in excluding evidence of sentimental and emotional value depends upon the appropriate standard for measuring damages for loss of items of personal property

---

3. A number of courts from other jurisdictions have held that where a judge has made a ruling in limine, an offer of proof is not required. *Collins v. Wayne Corp.,* 621 F.2d 777, 781 (5th Cir.1980); *Dicks v. Cleaver,* 433 F.2d 248, 252 (5th Cir.1970); *Himango v. Prime Time Broadcasting, Inc.,* 37 Wash.App. 259, 680 P.2d 432, 436 (App.1984). For example, in *Himango v. Prime Time Broadcasting, Inc.,* Prime Time appealed the trial court's exclusion of certain evidence. The Washington Court of Appeals held that the issue was properly before the court for review even though Prime Time did not make a formal offer of proof because "the issue was fully argued in the motion in limine and the trial court was aware of the basis for Prime Time's proffered evidence." *Id.* 680 P.2d at 436.

4. Alaska Rule of Civil Procedure 51(a) provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection."

such as family photographs and family or personal videotapes. There appear to be three different standards currently employed by courts for measuring damages for loss of personal property. The first standard is the fair market value of the property at the time of loss. *See State v. Stanley,* 506 P.2d 1284, 1292 (Alaska 1973).[5]

However, a number of courts[6] and the Restatement (Second) of Torts[7] take the position that fair market value is not an appropriate measure of damages where the property has no market value, or where the value of the property to the owner is greater than the market value. For example, the Restatement (Second) of Torts § 927 states that where a person is entitled to judgment for the conversion of a chattel or destruction of an interest in a thing, that person may recover the value of the subject matter. Section 911(1) of the Restatement (Second) of Torts defines value as "exchange value or the value to the owner if this is greater than exchange value."

Thus, the second standard for measuring damages for the conversion of a chattel or destruction of an interest in a thing is the value of the property to the owner. This standard applies where the destroyed or lost property has no real market value or where the value of the property to the owner is greater than the market value.[8] Restatement (Second) of Torts § 911, comment e states that "[t]he phrase 'value to the owner' denotes the existence of factors apart from those entering into exchange value that cause the article to be more desirable to the owner than to others." Section 911, comment e includes family photographs among those articles which "give enjoyment to the user but have no substantial value to others."[9] This same Restatement comment further states that "it would be unjust to limit the damages for destroying or harming [these] articles to the exchange value."

The value to the owner is the value based upon actual monetary loss resulting from the owner being deprived of the property. A number of courts have held, and the Restatement (Second) of Torts takes the position, that this does not include "any sentimental or fanciful value."[10] Rather, value to the owner may be based on such things as the cost of replacement, original cost, and cost to reproduce.[11] To this effect, Restatement (Second) of Torts § 911, comment e states that if the subject matter cannot be replaced, "as in the case of a destroyed or lost family portrait, the owner will be compensated for its special value to him, as evidenced by the original cost, and the quality and condition at the time of loss." In applying such a standard to the present case, damages for the loss of the photographs would include the cost of purchasing and developing the film, while damages for the loss of the videotapes would

---

5. The superior court applied this standard in the present case. Moreover, in *Richardson v. Fairbanks North Star Borough,* 705 P.2d 454 (Alaska 1985), this court limited the damage award for loss of a pet dog to the dog's market value at the time of death. To this effect, we stated:

> The superior court correctly held that the Richardsons' subjective estimation of Wizzard's value as a pet was not a valid basis for compensation. Since dogs have legal status as items of personal property, courts generally limit the damage award in cases in which a dog has been wrongfully killed to the animal's market value at the time of death.

*Id.* at 456 (citations omitted).

6. *Campins v. Capels,* 461 N.E.2d 712, 720 (Ind. App.1984); *Bond v. A.H. Belo Corp.,* 602 S.W.2d 105, 109 (Tex.App.1980); *Herberg v. Swartz,* 89 Wash.2d 916, 578 P.2d 17, 25 (1978); and *McCurdy v. Union Pacific R.R. Co.,* 68 Wash.2d 457, 413 P.2d 617, 623 (1966).

7. Restatement (Second) of Torts § 911 cmt. e; § 927 cmt. c (1977).

8. *Garcia v. Color Tile Distrib. Co.,* 75 N.M. 570, 574, 408 P.2d 145, 149 (1965); *Winters v. Charles Anthony, Inc.,* 586 P.2d 453, 454 (Utah 1978); *McCurdy,* 413 P.2d at 623; *Broyles v. Broyles,* 711 P.2d 1119, 1124 (Wyo.1985); Restatement (Second) of Torts § 911 cmt. e; § 927 cmt. c (1977).

9. *See also Broyles,* 711 P.2d at 1124; *McCurdy,* 413 P.2d at 623.

10. *Herberg,* 578 P.2d at 25 (quoting *Kimball v. Betts,* 169 P. 849, 850 (1918)); *see also Broyles,* 711 P.2d at 1124 (claimants generally may not recover for the sentimental or fanciful value placed on lost property such as photographs); and Restatement (Second) of Torts § 911 cmt. e (1977) (damages cannot be based on sentimental value).

11. *Campins,* 461 N.E.2d at 721.

include the cost of purchasing the blank videotapes.

The third standard applies where the property has its primary value in sentiment. In this situation the proper measure of damages is value to the owner including sentimental and emotional value.[12] This standard has been adopted by a minority of jurisdictions. In fact, only one case in which a court adopted this standard to measure damages for loss of family photographs was cited to us. In *Bond v. A.H. Belo Corp.*, 602 S.W.2d 105, 106 (Tex.App.1980), a newspaper reporter lost Bond's photographs, newspaper clippings and birth certificates which she had accumulated over time and which could not be replaced. The court held that sentimental value could be considered in calculating damages.[13] Similarly, in *Campins v. Capels*, 461 N.E.2d 712 (Ind.App.1984), the court held that sentimental value could be considered in determining the value of rings which Capels had received over the years as awards for auto racing.

In *Richardson*, we considered a claim for mental and emotional suffering arising out of the destruction of a pet dog. *Richardson*, 705 P.2d at 456. We held that such recovery is limited to situations in which the trial judge makes a threshold determination that the severity of the emotional distress and the conduct of the offending party warrant a claim of intentional infliction of emotional distress. *Id.*[14] Likewise, in *Murray v. Feight*, 741 P.2d 1148 (Alaska 1987), we upheld a jury's award of damages for mental and emotional distress arising out of the interference with personal property. *Id.* at 1159–60. However, we held that recovery for emotional distress resulting from interference with chattels should be included within the general recovery for intentional infliction of emotional distress. *Id.* at 1160. Thus, in both cases we required the plaintiffs to make out a claim for intentional infliction of emotional distress in order to recover damages for emotional suffering arising out of the destruction of personal property.[15]

Based on our prior decisions and the Restatement (Second) of Torts § 911, and in the absence of a claim for intentional infliction of emotional distress or another intentional tort,

---

**12.** *Campins*, 461 N.E.2d at 721; *Bond*, 602 S.W.2d at 109. However, sentimental value does not mean "mawkishly emotional or unreasonable attachments to personal property." *Campins*, 461 N.E.2d at 721. A court should not allow a substantial recovery for loss of property when the specific owner has an atypical sentimental connection with the item involved. *Id.* Rather, sentimental value refers to the feelings normally generated by an item of personal property. *Id.* Thus, a jury could not base a damages award on a claimant's testimony that certain photographs were "priceless."

**13.** To this effect, the court stated as follows:

It is a matter of common knowledge that items such as these [personal items] generally have no market value which would adequately compensate their owner for their loss or destruction. Such property is not susceptible of supply and reproduction in kind, and their greater value is in sentiment and not in the market place. In such cases the most fundamental rule of damages that every wrongful injury or loss to persons or property should be adequately and reasonably compensated requires the allowance of damages in compensation for the reasonable special value of such articles to their owner taking into consideration the feelings of the owner for such property.... Where such special value is greater than the market value, it becomes the only criterion for the assessment of damages.

*Bond*, 602 S.W.2d at 109 (citations omitted).

**14.** As to a claim for intentional infliction of emotional distress, we stated as follows:

The Restatement (Second) of Torts, § 46(1) (1965) establishes the elements of a claim of intentional infliction of emotional distress. The offending party, through extreme or outrageous conduct, must intentionally or recklessly cause severe emotional distress or bodily harm to another.

*Richardson*, 705 P.2d at 456.

Landers explicitly states that he did not make any claim for intentional infliction of emotional distress. Landers further observed that since the Municipality is not subject to punitive damages, he did not attempt to show recklessness or intent on the part of the Municipality. Landers further argues that, "Since punitive damages are not allowed against municipalities, a valuation method that assesses the owner's emotional or sentimental value of items not likely to have market value is appropriate."

**15.** If Landers had introduced evidence that the Municipality had committed an intentional trespass or conversion he might possibly have recovered enhanced damages. The Restatement (Second) of Torts § 905(b) takes the position that damages for emotional distress resulting from the conversion of chattels should be recoverable. To this effect, comment d to § 905 states as follows:

One who has a cause of action for a tort may be entitled to recover as an element of dam-

we conclude that the appropriate measure of damages applicable in the instant case is that found in § 911 of the Restatement (Second) of Torts, namely, the value of the items to the owner.[16] We thus decline to adopt the minority view which allows damages for loss of items of personal property to be based on sentimental and emotional value. This holding is in accordance with our prior case law and the Restatement (Second) of Torts, and ensures that such damages will not be based on considerations which are difficult to measure.

Based on the foregoing, this case should be remanded to the superior court for a new trial on the issue of damages for the lost photographs and videotapes.

### D. *Attorney's Fees*

Landers appears to challenge the attorney's fee award in this case in his opening brief. However, Landers then goes on to state that he does not argue that the award of attorney's fees was incorrectly calculated. Rather, he states that "if the Supreme Court reverses the trial court's evidentiary decision in this matter, the award of attorney's fees should be held in abeyance pending retrial on the damage issue." Because we are vacating the jury's award of damages for loss of the photographs and videotapes, the attorney's fee award is set aside as it is dependent on the judgment.

### V. *CONCLUSION*

We REVERSE and REMAND for a new trial on damages in accordance with this opinion.

MOORE, C.J., not participating.

---

ages for that form of mental distress known as humiliation, that is, a feeling of degradation or inferiority or a feeling that other people will regard him with aversion or dislike. *This state of mind may result from … the deliberate trespass to land or destruction or dispossession of chattels.*

(Emphasis added.) One authority states:
> Recovery for mental distress in reaction to the negligent damage or destruction of personal property is ordinarily not available….

When the defendant's conduct is intentional, willful, or malicious, however, mental anguish is a proper element of damage.

4 Marilyn Minzer, Jerome H. Nates, Clark D. Kimball & Diana T. Axelrod, *Damages in Tort Actions* § 37.30 (1993).

**16.** In argument before the superior court on February 12, 1993, Landers tendered the damage theory we refer to as "value to the owner."