[No. 50670–1.   En Banc.   November 14, 1985.]

ARTHUR H. GOUCHER, *Appellant,* v. J. R. SIMPLOT COMPANY, *Respondent.*

*Duncan A. Bonjorni*, for appellant.

*Robert C. Tenney* and *Mark D. Watson* (of *Halverson, Applegate & McDonald, Inc., P.S.*), for respondent.

CALLOW, J.—Arthur Goucher, plaintiff below, appeals from a jury verdict for the defendant, J. R. Simplot Company, in a personal injury action. We reverse and remand for a new trial holding that the trial court erred in ruling that federal railroad safety regulations rather than Washington industrial safety regulations were the appropriate regulations to consider in determining whether Simplot was negligent.

On June 15, 1976, Goucher, a truck driver for the Pacific Intermountain Express, was dispatched to deliver a load of anhydrous ammonia to a chemical fertilizer retail outlet operated by Simplot. To unload, Goucher pulled his truck up to a railroad tank car. The ground where Goucher had to park his truck to connect hoses to the tank car was muddy. Goucher climbed the ladder on the side of the tank

car and walked from the catwalk to the platform around the cupola (dome) where he attached the hoses. Goucher made various trips up and down the ladder to open valves. When the truck tank was unloaded, Goucher stood on the ladder and leaned over the dome to shut the valve. As he did so, Goucher was exposed to ammonia fumes causing him to jerk backward and fall from the ladder.

Goucher sued claiming that Simplot was negligent. He stipulated that the railroad car was not defective for use as a railroad car. His claim was that Simplot was using the car as a fixed storage facility for anhydrous ammonia thereby breaching its duty to provide a safe workplace.

On the morning of trial, Simplot made a motion in limine to exclude evidence or jury instructions involving alleged violations of the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 *et seq.,* and the Washington Industrial Safety and Health Act of 1973 (WISHA), RCW 49.17.010 *et seq.* Simplot contended that because Goucher had stipulated that the railroad tank car was not defective in any manner, he had impliedly agreed that the tank car met federal statutory and regulatory specifications; specifically, the Federal Railroad Safety Act, 45 U.S.C. § 421 *et seq.* and the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 *et seq.* and the regulations adopted thereunder. Simplot further contended that these federal railroad safety statutes preempted OSHA and WISHA. Simplot also argued that OSHA and WISHA and regulations adopted thereunder were inapplicable because the railroad tank car was not a "permanent place of employment" nor was the plaintiff an "employee" of the defendant. Finally, Simplot asserted that the plaintiff's injuries were caused by his own negligence and that he slipped because of his awkwardness and muddy feet.

Goucher objected to the motion on the ground that it was not timely. The court ruled in favor of Simplot, excluding any mention of regulations other than federal railroad safety regulations. The jury instructions set forth what the court determined were applicable federal regulations. The

plaintiff excepted to these instructions. At the conclusion of trial, the plaintiff moved for a directed verdict on the issue of negligence. This motion was denied. The jury returned a verdict for the defense, finding that Simplot was not negligent. This appeal follows.

The first issue is whether the trial court erred in considering Simplot's motion in limine.

■ The plaintiff asserts that Simplot's motion in limine violated the time requirements of CR 6(d). CR 6(d) requires notice of written motions to be made at least 5 days in advance of the hearing thereon. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 617 P.2d 704 (1980). It is clear that the rule was violated since Simplot filed the motion on the day of trial. This court has previously held, however, "that CR 6(d) is not jurisdictional, and that reversal for failure to comply requires a showing of prejudice." *Brown*, at 364; *Loveless v. Yantis*, 82 Wn.2d 754, 759–60, 513 P.2d 1023 (1973).

In the present case, the plaintiff was able to provide countervailing oral argument and to submit case authority in support of his position. The trial was adjourned following a short discussion regarding the defendant's motion thereby allowing the plaintiff additional time to provide authority in opposition to the motion. The court, throughout the 2–week trial, offered to reconsider the motion and heard repeated arguments on the issue. Furthermore, the plaintiff never requested a continuance. There was no adequate showing of prejudice. *See Brown*, at 364. The trial court did not err in considering the defendant's untimely motion.

The second issue is whether the trial court erred in ruling that WISHA regulations involving ladders and platforms were inapplicable to a railroad tank car which was being used by Simplot to store anhydrous ammonia. We hold that it did so err.

As evidence of Simplot's negligence, Goucher proposed to demonstrate that the ladder and platform affixed to the tank car failed to comply with regulations promulgated

pursuant to WISHA and that the problem could have been remedied easily by attaching a removable hang–on platform. At the time of trial, the defendant argued that WISHA was preempted by the Federal Railroad Safety Act, 45 U.S.C. § 421 *et seq.,* and the Hazardous Materials Transportation Act, 49 U.S.C. § 1801 *et seq.* On appeal, the defendant now contends that the applicable enabling legislation is not the two aforementioned acts, but instead, the Safety Appliance Act, 45 U.S.C. §§ 1–16. The defendant then argues that the error made in instructing the jury regarding the Railroad Safety Act was inconsequential and not prejudicial to the plaintiff because the applicable regulations were nonetheless the same. Before considering any possible prejudicial effect we must determine which, if any, of the three named federal statutes is applicable in this case. The Code of Federal Regulations is of help in resolving that question.

The particular federal regulations pertaining to railroad tank car ladders and platforms are as follows:

§ 231.21 Tank cars without underframes.

. . .

(iv) Maximum spacing of treads, nineteen inches.
(v) Minimum clearance of treads and ladder stiles, two inches, preferably, two and one–half inches.
(vi) Operating platform, minimum width, seven inches; minimum thickness, one and three–quarters inches.

. . .

(3) . . . (i) Operating platform to be of sufficient length to provide access to all operating fittings. . . .

49 C.F.R. § 231.21 (1984).

Of the three aforementioned statutes, only the Safety Appliance Act is included in the list of enabling statutes which provide the authority for the promulgation of these regulations. *See* 49 C.F.R. § 231 (Authority). Thus, we need only consider whether the Safety Appliance Act has preempted OSHA and WISHA.

■ Before considering the preemption question, however, it is first necessary to address plaintiff's argument that the Safety Appliance Act and regulations promulgated

therefrom are not applicable here because the railroad car was not under the control of a common carrier, nor was the car in the stream of commerce. The Federal Safety Appliance Act of 1910 provides in part:

> It shall be unlawful for any common carrier [engaged in interstate commerce] to haul, or permit to be hauled or used on its line, any car . . . not equipped with appliances provided for . . . to wit: . . . all cars requiring secure ladders and secure running boards shall be equipped with such ladders and running boards . . .

45 U.S.C. § 11.

The above quoted section suggests that the Safety Appliance Act is intended to provide safety standards only for *common carriers* engaged in *interstate transit. See Risberg v. Duluth, M. & I.R. Ry.,* 233 Minn. 396, 401, 47 N.W.2d 113, *cert. denied,* 342 U.S. 832, *reh'g denied,* 342 U.S. 895 (1951). Attributes which characterize a "common carrier" are that: (1) It carries persons and goods belonging to others for their benefit and for hire; and (2) It holds itself out as ready to carry persons generally and is willing to engage in the transportation of goods or persons for hire as a public employment. *Ciaccio v. New Orleans Pub. Belt R.R.,* 285 F. Supp. 373 (E.D. La. 1968).

There is nothing in the record which suggests that Simplot is a common carrier. Even the owner from whom Simplot leased the tank car, Union Chemical Company, was not a common carrier. The Safety Appliance Act is therefore not relevant to this case. Our holding is supported by *PBR, Inc. v. Secretary of Labor,* 643 F.2d 890, 896 (1st Cir. 1981) wherein an employee of PBR, a manufacturing business, was fatally injured while operating machinery used to revitalize railbeds. On the day of the injury an OSHA compliance officer inspected PBR's worksite and cited the company for failure to provide machine guarding. PBR argued that the OSHA Commission erred in failing to grant the company's motion to dismiss based on section 4(b)(1) of the act, 29 U.S.C. § 653(b)(1). This section provides in pertinent part:

> Nothing in this chapter shall apply to working conditions of employees with respect to which other Federal agencies . . . exercise statutory authority to prescribe or enforce standards or regulations affecting occupational safety or health.

PBR argued that this section served to exempt PBR from compliance with OSHA standards because the Secretary of Transportation had already exercised his authority in prescribing regulations pursuant to the Federal Railroad Safety Act, an act intended to supplement existing laws pertaining to railroad safety. The First Circuit disagreed stating:

> Although the Secretary of Transportation is authorized to promulgate rules in "all areas of railroad safety", 45 U.S.C. § 431(a), the applicability of those rules is, of course, limited to entities within their scope, i. e., the persons or entities for whom compliance is mandated. Civil penalties may be assessed pursuant to the Federal Railroad Safety Act only against railroads and only railroads are mandated to comply with the Act and its implementing regulations. 45 U.S.C. § 438.

*PBR,* 643 F.2d at 896. That *PBR* concerns the Federal Railroad Safety Act rather than the Safety Appliance Act does not alter the general principle for which it stands; only common carriers are required to comply with railroad safety laws and regulations adopted thereunder.

In adopting this principle we are mindful of the numerous situations where a railroad tank car is temporarily on a siding and under the control of a party, not a common carrier, for purposes of loading or unloading cargo. We are not prepared to hold that in every such situation railroad safety regulations are inapplicable. To do so could interfere with interstate commerce thereby defeating one of the very purposes for which a national railroad safety system was enacted. Here, however, we are not concerned that our holding impairs the free flow of interstate commerce. Simplot used a railroad tank car on a seasonal basis for storage of anhydrous ammonia and had done so continuously for a number of years. The particular railroad tank car in ques-

tion was under the control of Simplot. The tank car was being used for storage of ammonia on June 15, 1976, had been in use since April 1976 and remained in use through August 1976. An average of six truck–trailer loads per month was unloaded into the tank car during that period of time. It was Simplot who contacted the railroad when it wanted the railroad to pick up the tank car. Simplot leased and was responsible for the maintenance of the property where its facility was located including the siding on which the tank car was located. Finally, Goucher's expert witness testified that it was both possible and economically feasible to utilize a hang–on platform for loading and unloading. He indicated that such a platform could be removed readily prior to returning the tank car to interstate commerce, thus preserving the physical makeup of the railroad tank car. *See PBR, Inc. v. Secretary of Labor, supra* at 895 (even contention that compliance with state regulations would interfere with physical makeup of railroad equipment might not be enough to excuse compliance). Under the facts of this case we find, as a matter of law, that the tank car was no longer being used as a railroad car and in effect became a "storage facility." Having concluded that the Safety Appliance Act is inapplicable, we need not consider the question of preemption.

We next consider whether WISHA and regulations promulgated therefrom apply to this case. *Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972) sets forth the test for deciding whether violation of a public law or regulation shall be considered in determining liability:

> The court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part
> (a) to protect a class of persons which includes the one whose interest is invaded, and
> (b) to protect the particular interest which is invaded, and
> (c) to protect that interest against the kind of harm which has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

81 Wn.2d at 257, quoting Restatement (Second) of Torts § 286 (1965).

The defendant argues that the plaintiff is not within the "class of people" intended to be protected by WISHA and, therefore, the plaintiff was not entitled to an instruction on WISHA statutory or regulatory provisions. Plaintiff, on the other hand, claims that under *Bayne v. Todd Shipyards Corp.,* 88 Wn.2d 917, 568 P.2d 771 (1977), Simplot had a duty pursuant to WISHA to provide a safe place to work for *all workmen* on its premises including the plaintiff.

RCW 49.17.020 defines "employer" as follows:

(3) The term "employer" means any person, firm, corporation, partnership, business trust, legal representative, or other business entity which engages in any business, industry, profession, or activity in this state and employs one or more employees or who contracts with one or more persons, the essence of which is the personal labor of such person or persons and includes the state, counties, cities, and all municipal corporations, public corporations, political subdivisions of the state, and charitable organizations: *Provided,* That any person, partnership, or business entity not having employees, and who is covered by the industrial insurance act shall be considered both an employer and an employee.

RCW 49.17.020 defines "employee" as follows:

(4) The term "employee" means an employee of an employer who is employed in the business of his employer whether by way of manual labor or otherwise and every person in this state who is engaged in the employment of or who is working under an independent contract the essence of which is his personal labor for an employer under this chapter whether by way of manual labor or otherwise.

In *Bayne,* this court held that RCW 49.16.030 and .050, predecessors to the current RCW 49.17.010 *et seq.,* required an employer to furnish a safe workplace to all "workmen" and that this duty was not limited to employees of the defendant employer. 88 Wn.2d at 920. *Accord, Kelley v.*

*Howard S. Wright Constr. Co.,* 90 Wn.2d 323, 332–33, 582 P.2d 500 (1978).

As the defendant correctly contends, those cases are inapposite to the case here in that they both involve interpretations of prior statutes which specified that every employer had a duty to furnish a safe workplace for "workmen". RCW 49.16.030 (repealed and replaced by Laws of 1973, ch. 80, codified in RCW 49.17). *Bayne,* 88 Wn.2d at 918. The corresponding section contained in the current statute speaks in terms of an employer owing a duty to each of "*his* employees." RCW 49.17.060(1).

The definitions of "employer" and "employee," however, do not alone determine what duty, if any, Simplot owed to the plaintiff. Reference must be made to RCW 49.17.060 to determine the duty of an employer:

> Each employer:
> (1) Shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees: *Provided,* That no citation or order assessing a penalty shall be issued to any employer solely under the authority of this subsection except where no applicable rule or regulation has been adopted by the department covering the unsafe or unhealthful condition of employment at the work place; and
> (2) Shall comply with the rules, regulations, and orders promulgated under this chapter.

Under this act an employer's duty is twofold. The first is a "general duty" imposed on an employer to protect its employees from hazards that are likely to cause death or serious bodily injury. The second is a "specific duty" imposed on employers to comply with the WISHA regulations. The federal counterpart to Washington's twofold duty statute, 29 U.S.C. § 654(a) has been subject to varying interpretations, some courts holding that OSHA regulations protect not only an employer's *own* employees, but all employees who may be harmed by the employer's violation of the regulations; other courts holding that OSHA regulations protect only an employer's own employees. *Compare*

*Beatty Equip. Leasing, Inc. v. Secretary of Labor,* 577 F.2d 534, 536–37 (9th Cir. 1978), *Marshall v. Knutson Constr. Co.,* 566 F.2d 596, 599–600 (8th Cir, 1977), *and Brennan v. Occupational Safety & Health Review Comm'n,* 513 F.2d 1032, 1036–39 (2d Cir. 1975) (dictum) *with Melerine v. Avondale Shipyards, Inc.,* 659 F.2d 706, 710–11 (5th Cir. 1981) *and Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255 (4th Cir. 1974).

The rationale of *Teal v. E.I. DuPont de Nemours & Co.,* 728 F.2d 799 (6th Cir. 1984) persuades us that WISHA regulations should be construed to protect not only an employer's own employees, but *all* employees who may be harmed by the employer's violation of the regulations. In that case the plaintiff, Teal, sued DuPont to recover for injuries sustained as a consequence of an accident that occurred at DuPont's plant. *Teal,* at 800. Teal was the employee of an independent contractor hired to do work in DuPont's plant. During trial, Teal produced evidence that DuPont had failed to conform to federal regulations pertaining to required dimensions between ladder rungs and the back of the ladder. DuPont argued on appeal that OSHA regulations were not relevant because OSHA did not impose a duty upon employers to protect the safety of an independent contractor's employees. In support of that proposition, DuPont relied upon the plain language of the act which provides:

Each employer—
(1) shall furnish to each of *his* employees . . . a place of employment which [is] free from recognized hazards
. . .

(Italics ours.) 29 U.S.C. § 654(a).

The court disagreed, holding that an employer's responsibilities under the act depend on which provision the employer is accused of breaching, and that the class of persons for whom each of the duty provisions was enacted must be determined with reference to the particular duty in dispute. When a party relies on the general duty clause, only those parties who are employees of the employer are

protected. On the other hand, when a party relies on the specific duty clause on the ground that the employer failed to comply with a particular OSHA standard or regulation, then *all* of the employees who work on the premises of another employer are members of the protected class. *Teal,* 728 F.2d at 804.

We find this rationale to be sound and hold that the plaintiff here, in alleging the violation of particular WISHA regulations, is a member of the protected class. The application of WISHA to this case is appropriate given the stated purpose of WISHA "to assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman working in the state of Washington". RCW 49.17.010. WISHA, being a remedial statute, must be liberally construed to carry out its purpose. *Herberg v. Swartz,* 89 Wn.2d 916, 578 P.2d 17 (1978).

Simplot also contends that WISHA is not applicable here because the WISHA regulations advanced by the plaintiff apply only to "permanent places of employment". Simplot's argument is based on WAC 296–24–73501 which provides:

> General requirements. This section applies to all permanent places of employment, except where domestic, mining, or agricultural work only is performed. Construction work is not to be deemed as a permanent place of employment. Measures for the control of toxic materials are considered to be outside the scope of this section.

Neither WISHA, OSHA, nor regulations promulgated therefrom define the phrase "permanent places of employment". We find, however, that the regulation itself clarifies the meaning of the phrase. The first sentence of the regulation limits "permanent places of employment" not to particular items or structures present on the work site, but to the type of work which is being performed. Case law has not specifically defined "permanent places of employment", but cases involving occupational safety suggest that the phrase refers to the general locale of the employer, not to the specific machinery or structure on the property where the accident occurred. Thus, in *Greyhound*

*Lines–West v. Marshall,* 575 F.2d 759 (9th Cir. 1978), the court, in determining the applicability of certain safety regulations, did not question whether a "pit" or "ditch" was itself a permanent place of employment but instead looked to the general locale of the bus service operations. *See also Lee Way Motor Freight, Inc. v. Secretary of Labor,* 511 F.2d 864 (10th Cir. 1975).

The Simplot yard where the tank car was parked had been used as an outlet for agricultural chemicals and fertilizers for approximately 20 years. That the railroad tank cars used for storage of anhydrous ammonia by Simplot were moved in and out for the convenience of Simplot and Union Chemical does not alter the status of the Simplot facility as a "permanent place of employment." Clearly the Simplot facility is within the ambit of WAC 296–24–73501.

The next issue is whether the trial court erred in declining to give a directed verdict for Goucher.

Goucher argues that violation of a WISHA regulation is negligence per se and therefore the trial court erred in refusing to give his proposed jury instruction 12 regarding directed liability. While we agree that violation of a safety regulation constitutes negligence per se, we do not agree that a directed verdict was appropriate in this instance.

Plaintiff's proposed instruction, modeled after WPI 23.02, reads:

> The negligence of the defendant has been established. Accordingly, the answer to question number one in the special verdict form furnished to you, is "yes," and that answer has been filled in for you on the verdict form. The plaintiff has the burden of proving what damages were proximately caused by the defendant's negligence.
>
> The claim of contributory negligence by defendant is an independent claim. On that claim the defendant has the burden of proving that the plaintiff was negligent in one of the ways claimed, that the plaintiff was injured or damaged, and that the negligence of the plaintiff was a proximate cause of the injury or damage.

An instruction such as the above is to be used to set out the issues and burden of proof in a case involving a

claim of negligence or a negligence counterclaim, where the negligence of one party is admitted or directed, but the other party's negligence or liability is still a jury issue. WPI 23.02, Note on Use, 6 Wash. Prac. 145 (2d ed. 1980). Simplot did not admit liability and therefore whether Goucher's proposed instruction applies depends on whether the issue of negligence should have been directed, *i.e.,* whether a directed verdict was appropriate. A trial court exercises no discretion in ruling upon a motion for a directed verdict and may grant the motion only where there is no competent evidence or reasonable inference which will sustain a jury verdict in favor of the nonmoving party. *Levy v. North Am. Co. for Life & Health Ins.,* 90 Wn.2d 846, 851, 586 P.2d 845 (1978).

The only evidence in the record before us pertaining to the actual dimensions of the tank car was the testimony of Goucher's expert witness. The witness' testimony was based on information given him by Goucher's attorney who apparently measured the ladder, platform and railing of a tank car similar to the one at issue here. It is unclear from the record before us whether these are the actual dimensions or merely estimates. Further, the parties stipulated prior to trial that the tank car was not defective as a railroad tank car. Relying on that stipulation and the court's ruling that the federal railroad safety regulations were controlling, Simplot apparently did not think it necessary to produce evidence regarding these dimensions. Under the unique facts of this case, there remains a question of fact regarding whether any WISHA regulations were actually violated. For this reason, a directed verdict for the plaintiff was not appropriate. The trial court did not err in declining to give Goucher's proposed instruction 12.

This court has already determined that plaintiff is of the class that WISHA and regulations adopted therefrom were intended to protect. Hence if on remand the jury determines that applicable WISHA regulations were violated, Simplot must be found to be negligent as a matter of law unless Simplot is able to show that the violation was due to

some cause beyond its control thus justifying the violation.

█ Simplot argues that the platform size, railing dimensions, and the toe space clearance are irrelevant because the plaintiff fell from the top rung of the ladder and therefore a failure to comply with such regulations does not constitute negligence per se. We disagree. Goucher testified that had a bigger platform been made available, he would have used the platform rather than standing on the top of the ladder. Obviously the fact that Goucher did not use the platform provided makes the causative relationship between a violation of the regulations and Goucher's injuries more attenuated. Negligence per se, however, only establishes a defendant's duty and breach thereof; the question of whether the breach is a proximate cause of the plaintiff's injury, unless it is so clear as to be established as a matter of law, remains an issue to be determined by the trier of facts. *Hansen v. Washington Natural Gas Co.*, 95 Wn.2d 773, 779, 632 P.2d 504 (1981); *Kness v. Truck Trailer Equip. Co.*, 81 Wn.2d 251, 258, 501 P.2d 285 (1972). Here we cannot say as a matter of law that Simplot's failure to comply with the applicable WISHA regulations was a proximate cause of the plaintiff's injuries. That remains a question for the jury.

The final issue is whether the trial court erred in instructing the jury that there may be more than one proximate cause of an injury. We hold that the court did not err.

█ Where each side claims that the negligence of the other party was the proximate cause of the accident, it is error to refuse an instruction which states specifically that there may have been more than one proximate cause of an event. *Brashear v. Puget Sound Power & Light Co.*, 100 Wn.2d 204, 208, 667 P.2d 78 (1983); *Jonson v. Chicago, M., St. P. & Pac. R.R.*, 24 Wn. App. 377, 380–81, 601 P.2d 951 (1979). Here Simplot alleged in its answer to plaintiff's complaint that the plaintiff was injured as a result of his own negligence and/or the negligence of others. At trial, Simplot presented evidence that Goucher was aware of the

muddy condition of his boots, that he failed to work from the work platform, and that he failed to wear a safety gas mask. The trial court was correct in including within the definition of proximate cause the statement that there may be more than one proximate cause of an event.

The plaintiff asserts other claimed errors as grounds for reversal. We find it unnecessary to resolve the remaining issues presented by plaintiff, having concluded that WISHA and its adopted companion regulations are controlling. The verdict of the jury is set aside and the cause is remanded for a new trial.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.