[No. 6339-9-III. Division Three. April 29, 1986.]

SARANAK CHHUTH, *as Administrator,* ET AL, *Appellants,* v. SONDRA MICHELLE GEORGE, ET AL, *Respondents.*

*John E. Morse, Douglas J. Bratt,* and *Morse & Bratt,* for appellants.

*David A. Thorner, Donald E. Templeton,* and *Thorner, Kennedy, Gano & Rowley, P.S.,* for respondent George.

*John W. Lohrmann* and *Lohrmann & Parker,* for respondent Pasco School District.

THOMPSON, J.—On September 25, 1981, Saintyro Chhuth,

age 7, was fatally injured when he was struck by an automobile driven by Sondra George while he was crossing a street on his way home from school. Saintyro and a group of school friends were attempting to cross the south side of "A", a 2–way, 4–lane Pasco street, approximately midway between the intersections of 8th and 9th Avenues. Saintyro was struck by Ms. George's westbound vehicle traveling in the inside (south) lane. Another westbound vehicle driven by Albert Northrup in the outside north lane slowed and stopped upon seeing Saintyro. Ms. George, driving in the inside westbound lane, approximately 30 feet behind the Northrup car, could not see Saintyro because her vision was obscured by the Northrup car on her right. Saintyro's mother and father, Saranak and Tysaing Chhuth, brought survival and wrongful death actions against Pasco School District No. 1 and Ms. George, the driver of the vehicle which struck the child. The District and Ms. George cross–claimed against each other and later counterclaimed against the Chhuths for contribution.

Prior to trial, the Chhuths moved to dismiss the counterclaims against them, contending they were protected by the doctrine of parental immunity. The motion was denied, trial was held, and the jury by special verdict found (1) Ms. George and Mrs. Chhuth were not negligent; (2) the District and Mr. Chhuth were negligent, but their negligence was not a proximate cause of Saintyro's injury and death; and (3) Saintyro was negligent and his negligence was the proximate cause of his death; 100 percent of the liability was apportioned to the child.

The trial court denied the Chhuths' motion for judgment notwithstanding the verdict or new trial against Ms. George and entered judgment on the special verdict January 23, 1984, dismissing the complaint against her. On March 23, 1984, the trial court ordered a new trial to apportion damages among the District, Mr. Chhuth, and Saintyro Chhuth. Noting that the jury found each of the three negligent, the court then ruled as a matter of law that the District's and Mr. Chhuth's negligence was a proximate cause of Sain-

tyro's death. The Chhuths appeal the denial of a new trial and judgment n.o.v. against Ms. George and the denial of their motion to dismiss the claims against them for contribution. The District cross–appeals the granting of a new trial, contending the court erred when it ruled as a matter of law that its negligence was a proximate cause of injuries to Saintyro. In the event of a retrial, the District seeks to include Ms. George as a defendant. Ms. George cross–appeals the dismissal of her counterclaims if the issue of her negligence is relitigated. We affirm in part and reverse in part.

The first issue is whether the trial court erred in instructing the jury concerning Ms. George's duties (1) not to drive at a speed greater than is reasonable and prudent under the existing conditions, RCW 46.61.400(1); and (2) to anticipate the presence of children upon the public highway. The Chhuths assign error to the court's failure to give the following proposed instructions relating to Ms. George's standard of care:

> A statute provides that no person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event, speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

Proposed instruction 26.

> 1. Plaintiffs claim that defendant Sondra George was negligent in one or more of the following respects:
>
> . . .
> (c) She drove her vehicle too fast for the existing conditions, those being the presence of children in the area.

Proposed instruction 45, subsection 1(c).

The Chhuths argue Ms. George's awareness of children crossing the street at the same location on this and other occasions constituted the "conditions" and "actual and potential hazards" described in proposed instruction 26, *see*

RCW 46.61.400(1), WPI 70.05, which imposed a statutory duty to reduce her speed below the posted 30 m.p.h.

In *Kiemele v. Bryan*, 3 Wn. App. 449, 476 P.2d 141 (1970), the court refused to give the speed instruction in a case involving a 9-year-old pedestrian struck on a narrow, 2-lane road as he returned home from school. The driver testified he first saw the child standing on the shoulder of the roadway with his back toward the road. The driver maintained a speed of 25 m.p.h. until he came abreast of the child, whereupon the child suddenly moved into the path of the automobile. Under those facts, the reviewing court held failure to submit the requested speed instruction prejudicially denied the plaintiff the opportunity to argue his theory the driver was negligent as a matter of law in failing to reduce speed. *Kiemele*, at 453.

■■ A speed instruction *is* properly refused, however, where (1) excessive speed is not a proximate cause of the accident, or (2) a conclusion of unreasonable speed would be the product of impermissible speculation and conjecture. *Grobe v. Valley Garbage Serv., Inc.*, 87 Wn.2d 217, 219, 551 P.2d 748 (1976); *Windle v. Huson*, 32 Wn. App. 230, 234, 646 P.2d 790 (1982). In *Kiemele*, the driver actually saw the boy and had adequate notice of the potential or actual hazard ahead. Here Ms. George saw some children who had already crossed the road, but she did not see Saintyro until the moment before impact when he darted out from in front of the Northrup car 2 feet in front of her. Here, as in *Grobe*, given the few seconds of available reaction time, speed was not a factor. Since Ms. George did not actually see Saintyro in time to reduce her speed to avoid contact with him, the facts did not support giving proposed instructions 26 and 45, subsection 1(c). The instructions given allowed plaintiffs to argue their theory of negligence based on Ms. George's failure to reduce speed upon seeing the Northrup car stopped and seeing other children in the vicinity.

The Chhuths next contend the trial court's failure to give their proposed instruction 31 coupled with the actual sub-

mission of instructions 21, 24, and 25[1] unduly emphasized the defense theory of Saintyro's contributory negligence.

Proposed instruction 31 provided:

The driver of a vehicle of any kind is bound to anticipate the presence of children upon the public highway and to exercise reasonable diligence to avoid injuring them and in so doing, he is not justified in assuming that a young child will manifest the judgment and prudence of an experienced man, but must govern his own conduct with some reasonable degree of respect for that fact.

Instruction 21 provided:

A statute provides:

That a pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway.

This right of way, however, is not absolute but relative, and the duty to exercise ordinary care to avoid collisions rests upon both pedestrians and drivers. The primary duty, however, rests upon the party not having the right of way.

. . .

Notwithstanding the foregoing, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall exercise proper precaution upon observing any child or any obviously confused or incapacitated person upon a roadway.

Instruction 24 provided:

Every person using a public street or roadway has the right to assume that other persons thereon will use ordinary care and will obey the rules of the road, and has a right to proceed on such assumption until he or she knows, or in the exercise of ordinary care should know, to the contrary.

Instruction 25 provided:

It is the duty of every person using a public street or roadway whether a pedestrian or a driver of a vehicle to exercise ordinary care to avoid placing himself or herself

---

[1]Error has only been assigned to instruction 25, however.

or others in danger and to exercise ordinary care to avoid a collision.

Proposed instruction 31 was taken from *Johnson v. Barnes*, 55 Wn.2d 785, 350 P.2d 471 (1960). Although *Johnson* did set forth a duty to anticipate the presence of children where children are in plain view along the roadway, *Johnson*, at 787–88, the case also distinguished itself from instances where children "darted" from behind some obstruction and could not have been seen in time to avoid the accident. *Johnson*, at 789. The court was therefore correct in rejecting the instruction here. Moreover, the court gave other instructions specifically referring to the standard of care of a child.[2] Taken as a whole, the instructions did not improperly overemphasize the defense or place a higher standard of care upon Saintyro.

▉ The next issue is whether the trial court improperly allowed a claim of contribution against Saintyro's father for failure to properly supervise and instruct. Pursuant to RCW 4.22.040(1),[3] a new trial was granted to apportion Saranak Chhuth's comparative fault based on the court's determination there was no parent–child immunity for negligent supervision. Parental immunity has been addressed in three recent cases decided after the trial judge ruled in this case. *Jenkins v. Snohomish Cy. PUD 1*, 105

---

[2]Instruction 22 provided in part:

"The above rule of law [violation of a statute as negligence as a matter of law] does not necessarily apply, however, to a violation of a statute, by Saintyro Chhuth. His acts must be judged by the standard of ordinary care applicable to a child."

Instruction 26 provided:

"When referring to a child, ordinary care means the same care that a reasonably careful child of the same age, intelligence, maturity, training and experience would exercise under the same or similar circumstances."

See also last paragraph of instruction 21, quoted in the text.

[3]RCW 4.22.040:

"Right of contribution—Indemnity. (1) A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them. . . . The basis for contribution among liable persons is the comparative fault of each such person."

Wn.2d 99, 713 P.2d 79 (1986); *Talarico v. Foremost Ins. Co.*, 105 Wn.2d 114, 712 P.2d 294 (1986); *Baughn v. Honda Motor Co.*, 105 Wn.2d 118, 712 P.2d 293 (1986).

> In order for the conduct of parents in supervising their child to be actionable in tort, such conduct must rise to the level of willful and wanton misconduct; if it does not, then the doctrine of parental immunity precludes liability. . . .
>
> . . .
> While it is true that the doctrine of parental immunity has been substantially curtailed in numerous respects in this state, it has not been abrogated in parental supervision cases such as this one.

(Footnote omitted.) *Talarico,* at 116–17; *see also Jenkins,* at 105–06; *Baughn,* at 119–20. In *Baughn* the court made it clear the same rule of parental immunity applies when a tortfeasor seeks indemnity or contribution from parents for tort damages. Here, the parties do not assert, nor does the record support, a finding of willful or wanton misconduct; therefore, the court should have dismissed the claims for contribution against Mr. and Mrs. Chhuth.

The District argues that the doctrine of parental immunity should not apply since in wrongful death cases the reason for the rule no longer exists. The District contends since the child is deceased, there is no longer a need to protect family tranquility, parental control and authority. We are not persuaded. As noted in *Jenkins,* at 104–05, there are additional policy reasons for granting parental immunity even in wrongful death cases. Since the underlying reasons for granting parental immunity are unaffected by the demise of a family member, the mere fact the cause of action is for wrongful death will not abrogate the parental immunity doctrine.

The next issue is whether the court erroneously disallowed certain testimony and photographs. Evidence was offered through an investigator hired by the parents that on April 15 and 16, 1982, and January 17 and 21, 1983, schoolchildren crossed A Street in the same area where Saintyro was fatally injured. The plaintiffs argue the photographs

and accompanying testimony regarding observations made of other children was relevant to the issue of Saintyro's standard of care and the District's ongoing failure to monitor its busing program.

The admissibility or exclusion of evidence, be it demonstrative or oral testimony, lies in the sound discretion of the trial court. The trial court's decision will be overturned only upon a showing of an abuse of discretion. *State v. Rowe*, 77 Wn.2d 955–57, 468 P.2d 1000 (1970); *Himango v. Prime Time Broadcasting, Inc.*, 37 Wn. App. 259, 266, 680 P.2d 432 (1984). Here, the court rejected the testimony and photographs on the basis they were "too remote in time and too unique to the particular situation" and were prejudicial. We agree with the trial court's ruling and find no abuse of discretion occurred.

In light of our ruling as hereinafter noted, the next two issues of claimed error regarding instruction to the jury to consider the effect of federal income taxes as an offset and the admission of the present worth letter need not be discussed. We have concluded the trial court erred in remanding this case for trial on damages. Therefore, the issues have become moot.

The District in its cross appeal takes issue with the court's ruling as a matter of law that negligence of the District was a proximate cause of Saintyro's death. In order for the jury to find liability, there must be a showing of the existence of a duty, breach of that duty, proximate cause between the breach and injury, and resulting damage. *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 73, 684 P.2d 692 (1984). A finding of proximate cause is premised upon proof of cause in fact,[4] as well as a legal determination that liability should exist. *Petersen v. State*, 100 Wn.2d 421, 435, 671 P.2d 230 (1983). That legal determination of "proximate cause" is defined as a cause which in a direct

---

[4]But for defendant's acts, the injury would not have occurred. *See Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 676, 709 P.2d 774 (1985); *King v. Seattle*, 84 Wn.2d 239, 249, 525 P.2d 228 (1974).

sequence, unbroken by any new independent cause, produces the injury complained of and without which the injury would not have happened. *Petersen,* at 435–36. If the event would have occurred regardless of the defendant's conduct, the conduct is not the proximate cause of injury. *Davis,* at 74.

■■ The question of proximate cause is ordinarily for the jury unless the facts are undisputed and do not admit reasonable differences of opinion raising a question of law for the court. *Goucher v. J.R. Simplot Co.,* 104 Wn.2d 662, 676, 709 P.2d 774 (1985); *Bowers v. Transamerica Title Ins. Co.,* 100 Wn.2d 581, 590, 675 P.2d 193 (1983); *Petersen,* at 436. The high standard for taking the case from the jury on the issue of proximate cause has been established as follows:

> A motion for a judgment n.o.v. should not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict. All evidence must be viewed in the light most favorable to the party against whom the motion is made. There must be "substantial evidence" as distinguished from a "mere scintilla" of evidence, to support the verdict—*i.e.,* evidence of a character "which would convince an unprejudiced, thinking mind of the truth of the fact to which the evidence is directed." A verdict cannot be founded on mere theory or speculation.

(Citations omitted.) *Brashear v. Puget Sound Power & Light Co.,* 100 Wn.2d 204, 208–09, 667 P.2d 78 (1983) (quoting *Hojem v. Kelly,* 93 Wn.2d 143, 145, 606 P.2d 275 (1980)).

In the instant case, the Chhuths argued the District was negligent in (1) failing to implement effective procedures to instruct students in the use of school buses and supervise them accordingly, and (2) failing to maintain crossing guards at A Street when the District knew or should have known students were not utilizing bus services. The trial court in its oral ruling stated:

> The jury has found that one or the other of those mat-

ters was proven to be negligent conduct by the School District.

Quite simply the duty that they owed Saintyro Chhuth was to see that Saintyro Chhuth would not himself negligently cross a four–lane highway.

In other words, their duty was to protect this youth against himself. So, once they find that the School District failed in that regard there would be in my estimation no reason for them to find, however, because this youth did exactly what the program was designed to prevent, to prevent youths from negligently darting across streets. There was no reason for the jury to find that it was not the proximate cause. And therefore I grant a new trial to the plaintiff against the School District.

Later, in focusing on the second theory of negligence, failure to supply crossing guards, the court explained a proximate cause question would be present only if crossing guards were found to be present. The court was of the opinion the factual determination was concluded once the jury found absence of crossing guards.

We reverse the trial court's ruling that the District's negligence was a proximate cause of Saintyro's death. It is not possible to determine from the special verdict the basis for the jury finding that the District was negligent. It could be negligent implementation and supervision of bus procedures, or breach of duty by the principal, first grade teacher or the school bus supervisor. On the other hand, the basis of negligence could have been failure to supply crossing guards. But having found negligence, and that such negligence was not the proximate cause of Saintyro's death, the jury in substance concluded Saintyro's own intervening negligence was the sole proximate cause. Thus, it concluded that even though the District was negligent, that negligence was not a "cause which in a direct sequence, unbroken by any new independent cause, produces the injury complained of and without which the injury would not have happened." *Petersen,* at 435–36. Viewing the evidence in the light most favorable to the nonmoving party (the District), as the trial court must do in ruling on this motion,

there is evidence to support the jury's conclusion the District's negligence was not a proximate cause of Saintyro's death. The issue of proximate cause falls within the scope of the jury's duties and since the court properly instructed the jury, there is no basis for disregarding the verdict. It was error for the court to disregard the jury's verdict.

Although it would appear another jury at another time might decide otherwise, all of the issues were properly submitted for the jury's decision, and this court finds no basis to set aside any portion of the jury's special verdict or to grant a new trial to any of the parties.

We affirm the trial court's denial of the Chhuths' motion for judgment n.o.v. against Ms. George. We reverse the granting of a new trial to apportion damages and order the verdict of the jury reinstated.

GREEN, C.J., and MUNSON, J., concur.

Review denied by Supreme Court July 8, 1986.