571 So.2d 183 (1990)
Ronald BARNES, Sr. and Denise Barnes Individually and on behalf of the Estate of the late Ronald Barnes, Jr.
v.
James L. BOTT, Individually and on behalf of his minor son, James D. Bott, State Farm Insurance Company and Orleans Parish School Board.
No. 89-CA-1501.
Court of Appeal of Louisiana, Fourth Circuit.
November 29, 1990.
Writ Denied January 31, 1991.
David W. Bernberg, Jacobs, Manuel & Kain and Allain F. Hardin, Fransen & Hardin, New Orleans, for appellants.
Clare F. Jupiter, Jefferson, Bryan, Jupiter, Lewis & Blanson, New Orleans, for appellees.
*184 Before CIACCIO, WILLIAMS and BECKER, JJ.
CIACCIO, Judge.
This is a suit for wrongful death instituted by the parents of a six year old child who was struck by a vehicle and killed while attempting to cross the street in a school zone area. The trial court found no liability on the part of defendant, the Orleans Parish School Board and dismissed plaintiffs' suit. For the following reasons, we reverse the judgment of the trial court and remand the case for further proceedings.

FACTS
On March 20, 1986, at approximately 3:05 p.m., Ronald Barnes, Jr., a first grade student at George Washington Elementary School, was struck by a car being driven by James D. Bott. The little boy was struck and killed as he attempted to cross the intersection of St. Claude and Alvar Streets. The child had been dismissed from school at 3:00 p.m. and was walking home with his half-brother, Kevin Goodman. Apparently, Ronald lost a shoe while crossing the street, and was struck when he returned to retrieve it. Kevin Goodman had also turned around to pick up the shoe, but had jumped from the path of the car to avoid being hit.
At the time of the accident, the City of New Orleans employed approximately sixty-six school crossing guards who were assigned to cross students at various public schools in the New Orleans area. Darleen George, the guard who had been assigned to the corner of St. Claude and Alvar Streets near George Washington School, was not present on the day of the accident due to illness. No replacement had been assigned to this intersection, and on the day of the accident the children crossed the street without supervision.
This suit was instituted by Ronald Barnes, Sr. and Denise Barnes, the parents of Ronald Barnes, Jr., against James L. Bott, individually and on behalf of his minor son, James D. Bott, the Botts' insurer and the Orleans Parish School Board ("School Board"). Kevin Goodman, the decedent's half-brother, was subsequently added as a plaintiff in this matter. Plaintiffs later amended their petition to include as defendants Darleen George and the City of New Orleans. Prior to the trial of this matter, plaintiffs settled their claims against the Botts and their insurer and the City of New Orleans and Darleen George. Plaintiffs then proceeded to trial against the only remaining defendant, the School Board. For written reasons assigned, the trial court found no breach of duty of the part of the School Board and dismissed plaintiffs' suit. On appeal, the contested issue is whether the School Board owes a duty of care to its students to protect against the risk involved, i.e., being struck by a vehicle at this intersection when no crossing guard is present.
Testimony at trial reveals the following:
George Wiebelt, the administrative assistant for the Special Operations Division of the New Orleans Police Department ("SOD") testified that the operation of the school crossing guard program was under the direction of the SOD. He stated that the police department hired personnel to act as school crossing guards during the 1985-1986 school year and that the SOD was responsible for the guards' payroll. He testified that the guards were assigned by the police department to a specific location, and they were informed that they were to report to the individual school each day, both in the morning and the afternoon, to sign in and out. He also testified that the principals of the schools who were assigned crossing guards were informed of this procedure and were responsible for preparing time cards for the employee verifying the attendance of the guard at the school. Mr. Wiebelt acknowledged that the principal had no authority to hire or fire a guard or as to their rate of pay, but the principal usually made a suggestion as to which intersection was most in need of a crossing guard. He stated that both the crossing guard and a representative of the individual school were obligated to notify the police department when a guard was absent, and the SOD would then take action *185 to assign a police officer on motorcycle to that intersection.
Allison Dupaquier, a clerk employed by the Special Operations Division, was the employee who actually administered the school guard crossing program. She testified that she hired and fired the guards on a yearly basis, handled payroll and worked with the principals at the school, who were responsible for the day to day contact with the guards. She stated that the principals were advised to maintain a log book for the guards to sign in and out on a daily basis to monitor their attendance. Ms. Dupaquier stated that she informed the guards to notify the principal or herself if they could not attend work. She also testified that she advised the principals to try to get a volunteer to perform the duty of the guard in the case of an absence, since substitute guards were not available to the City. Ms. Dupaquier did not recall whether she specifically had informed the principal of George Washington School of this expectation.
Ethel Martin, the principal of George Washington Elementary School at the time the accident occurred, stated that it was her understanding that she was to monitor the attendance of the guards for payroll purposes. She testified that her secretary and clerk were also responsible for monitoring the attendance of the school guard. Ms. Martin kept a log book in the school office in which the crossing guards signed in and out, and she said she saw the crossing guard in her office almost every day. She also stated that prior to this accident when she became aware that the guard was absent, she would act as crossing guard herself at this intersection, or she would notify the students over the intercom that no guard would be present that day and that they should be careful when crossing the street. She further testified that she was aware that the City was not able to provide a substitute guard in the case of absence. Ms. Martin stated that she was not aware of a policy whereby the City would dispatch a police officer when notified of the absence of a guard, or that she was expected to find a replacement.
Ms. Martin testified that on the date of the accident, Darleen George reported for and completed the morning shift. However, she failed to call or show up for the afternoon shift, and her absence went unnoticed by Ms. Martin and her staff. Ms. Martin testified that she and her staff have several other duties to attend to at the end of the day which prevented them from always noticing the absence of the crossing guard. Because Ms. George's absence was not noticed prior to the dismissal time, the students were not informed of her absence on that day, nor was a substitute guard placed at the corner of St. Claude and Alvar Streets.
Darleen George, the school crossing guard assigned to this intersection, testified at trial that she usually reported for work to the school office several minutes early and waited in the office until her shift began. She testified that she was never informed by either the City or the school principal that she should call when she would be absent, and she did not notify anyone of her absence on the afternoon of March 20, 1986.
In order to determine whether liability exists under the facts of a particular case, the Louisiana Supreme Court has adopted a duty risk analysis. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The plaintiff must prove that defendant's conduct was a cause-in-fact of the plaintiff's harm, that the defendant owed a duty of care to protect against the risk involved, that the defendant breached the duty and that actual damages resulted. Harris v. Pizza Hut of Louisiana, 455 So.2d 1364 (La.1984). The first inquiry, cause-in-fact, is enunciated as whether the acts of defendant were a substantial factor in bringing about the harm. Dixie Drive It Yourself Sys., supra. Although cause-in-fact has not been seriously argued on appeal in the instant case, we find that under the facts presented here, the absence of a crossing guard was a substantial factor or cause-in-fact of the harm which occurred here.
We turn next to the issue of whether the School Board owed a duty of *186 care to insure the safety of its students while crossing streets which are regularly supervised by a crossing guard. The standard of care of school teachers and administrators is that of a reasonable person in such a position acting under similar circumstances. Capers v. Orleans Parish School Board, 365 So.2d 23, 24 (La.App. 4th Cir. 1978).
In the instant case, the School Board actively participated in the school guard crossing program which had been instituted by the City. The schools accepted the guards, allowed them to cross students at designated corners on a daily basis, and monitored the attendance of the guard in the school office. The School Board also had some input as to which locations were most in need of a crossing guard. The parents of school children were notified of the existence of the crossing guards at these designated locations.
The administrators of the schools, who were in day-to-day contact with the crossing guards, were in the best position to know whether or not the guards were present on any given day. Ms. Martin testified that she would either warn the students or find a substitute guard, usually herself, when she was made aware of the absence of the guard. By participating in and accepting the benefits of the program, we find that the School Board voluntarily assumed the duty of verifying that the crossing guard would be present at designated intersections during her normal duty hours.
Having found a duty on the part of the School Board, we next consider whether that duty was breached in the present case. The pertinent inquiry is "Did the School Board or its employees act with reasonable care in preventing the harm incurred?"
After carefully examining the record in this case, we find that the School Board's breach of duty owed to its students is well established. The School Board and more particulary, the administrators of George Washington School were aware of and participated in the school guard crossing program. The crossing guards routinely checked in with the school prior to beginning their crossing duties. However, no procedure was established by the school which would timely alert them to the absence of the guard in order to insure that the intersection was supervised or that the students or their parents were aware of the absence. The School Board cannot absolve itself of responsibility by asserting that the principal was never instructed by the City to provide a substitute in the case of absence. The principal testified that she knew that the intersection was dangerous, and that the City did not have the ability to provide a substitute guard. Ms. Martin was also aware of another child who had crossed the street without supervision and had been struck by a vehicle. She also stated at trial that when she was aware of the absence of the guard, she would either supervise the intersection herself, find someone who could, or notify the students of the situation. We find that the School Board breached its duty to its students by failing to adopt and implement a procedure which would require a designated school board employee to verify the presence of a school crossing guard and to provide for alternative personnel or a timely warning in the event of the guard's absence. We conclude that the trial court's findings to the contrary are manifestly erroneous.
We must next consider the issue of damages suffered by plaintiffs as a result of this breach of duty. On this issue, we acknowledge the constitutional authority of an appellate court to review factual findings based on the entire record. Gonzales v. Xerox, 320 So.2d 163 (La.1975). However, in the present case, the record does not contain an essential element for determining the amount of damages owed by the School Board. Based on its finding that the School Board was not liable, the trial court did not allocate the fault of the defendants who were released prior to trial, i.e., the driver of the vehicle, Darleen George and the City of New Orleans. Based on the lack of this information in the record, we are unable to make a factual determination of the School Board's percentage of liability. We therefore remand this case in order that the trial court may allocate liability among all defendants. All *187 costs of this appeal are assessed against The Orleans Parish School Board.
REVERSED AND REMANDED.