IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| AMANDA BRADY, an individual and legal guardian for MALLORIE BROUSSARD, a minor child, | ) ) ) | No. 70362-5-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| WILLIAM REINERT, an individual, EVERGREEN SCHOOL DISTRICT, a local government entity operating with the State of Washington, | ) ) ) ) ) ) | |
| Respondents. | ) | FILED: August 12, 2013 |

SCHINDLER, J. — M.B. is a student at Wy'east Middle School. William Reinert struck M.B. while she was crossing the street in front of Crestline Elementary School. Amanda Brady, individually and as the legal guardian of her child M.B., filed a personal injury lawsuit against Reinert and the Evergreen School District. Brady appeals summary judgment dismissal of claims against the Evergreen School District. We affirm.

FACTS

The facts are undisputed. Crestline Elementary School is part of the Evergreen School District and is located at 13003 Southeast 7th Street in Vancouver.

Most students who attend Crestline ride the bus. There is a school patrol on duty at two crosswalks in front of the school on Southeast 7th Street when the school day begins at 8:15 a.m., and after dismissal at 2:50 p.m. The school patrol consists of a supervising adult traffic monitor, a second adult traffic monitor, and 10 students.

The dismissal bell rings at 2:50 p.m. The school patrol is on duty at the crosswalks from 2:45 p.m. until 3:00 p.m. when the last school bus leaves. The supervising adult traffic monitor dismisses the patrol after the last bus leaves and there are no children in sight waiting to cross the street. Parents of the school patrol students are expected to pick their children up by 3:00 p.m.

Wy'east Middle School is located near Crestline at 1112 Southeast 136th Avenue. M.B. attends Wy'east Middle School. The school day at Wy'east Middle School ends at 2:30 p.m. M.B. lived directly across Southeast 7th Avenue on Southeast 131st Court.

On November 13, 2009, Theresa Oliver-Philossof was the supervising adult traffic monitor in charge of the school patrol. At approximately 3:00 p.m., Oliver-Philossof dismissed the school patrol. The adult traffic monitor signed out at 3:04 p.m.

At approximately 3:07 p.m. while driving his car, William Reinert struck M.B. as she was in the crosswalk in front of Crestline Elementary, walking across Southeast 7th Street. Reinert admitted that he "failed to keep a proper lookout." Reinert told the police that he "just spaced." The police cited Reinert for failure to yield to pedestrians in a crosswalk.

Amanda Brady, individually and as the legal guardian of M.B., filed a personal injury lawsuit against Reinert and the Evergreen School District (District).

2

The complaint alleged the District was negligent in supervising and operating the school patrol. The complaint states, in pertinent part:

> 5.2. Defendant, EVERGREEN SCHOOL DISTRICT, was negligent in one or more of the following ways:
>
> a. Failing to establish and institute policies and/or procedures for the effective and safe operation of the School Safety Patrol.
>
> b. Failing to properly train and/or supervise the adult Traffic Safety Monitor delegated with the daily supervision and/or operation of the School Safety Patrol.
>
> c. Failing to have the School Safety Patrol in place and operating at 3:06 p.m., 16 minutes after school let out when children would normally be crossing SE 7th Street.

The District filed a summary judgment motion arguing that it had no duty to a Wy'east Middle School student who was crossing the street after the Crestline school patrol was dismissed. The District asserted that while State law authorized the operation of a school patrol, the school has discretion to decide when the school patrol is on duty. In support, the District submitted the depositions of Oliver-Philossof and Crestline Principal Bobbi Hite. Hite testified, in pertinent part:

> Q. So it's really the dispatch of the buses that dictate when [the safety patrol] leave[s]?
> A. Correct.
> Q. Why is that?
> A. The majority of our students are out and gone for the day, and so it's a reasonable expectation that buses are gone, kids have moved out and so traffic monitors and kids move in to go home as well.

Oliver-Philossof testified that "when the last bus left and there [are] no visible children [in] sight or adults in the area that needs to be crossed, then [the safety patrol] can be released."

In opposition, Brady submitted the declaration of accident investigator Stephen Capellas and Wy'east Middle School Principal Gary Tichenor. Capellas testified that

3

when the 20 m.p.h. speed limit lights near the school are flashing, Crestline is an
" 'active' school zone." Capellas said the speed limit lights flash from 2:45 p.m. until
3:10 p.m. Tichenor testified that during the past 17 years, approximately 10 pedestrians
were hurt walking to or from Wy'east Middle School.

The trial court granted the District's motion for summary judgment. The court
ruled that the District did not have a "legal duty . . . to have crossing guards out at the
time of the incident." The court dismissed the claims against the District. Brady
appeals.

ANALYSIS

Brady argues the trial court erred in granting summary judgment dismissal.
Brady asserts the District had a duty to protect M.B. from foreseeable harm and to
supervise and schedule the operation of a school patrol at the crosswalk where the
accident occurred.

We review summary judgment de novo. Hartley v. State, 103 Wn.2d 768, 774,
698 P.2d 77 (1985). Summary judgment is appropriate where there is no genuine issue
of material fact and the moving party is entitled to summary judgment as a matter of
law. CR 56(c).

To prevail on a negligence claim, the plaintiff must prove (1) a duty owed by the
defendant to the plaintiff, (2) breach of that duty, and (3) injury proximately caused by
the breach. Hansen v. Friend, 118 Wn.2d 476, 479, 824 P.2d 483 (1992). The
existence of a duty is a question of law that we review de novo. Sheikh v. Choe, 156
Wn.2d 441, 448, 128 P.3d 574 (2006).

4

Schools have a duty to protect students in their custody from reasonably foreseeable harm. Travis v. Bohannon, 128 Wn. App. 231, 238, 115 P.3d 342 (2005). Accordingly, the school district has a duty to take certain precautions to protect students in its custody from reasonably foreseeable dangers. Peck v. Siau, 65 Wn. App. 285, 292, 827 P.2d 1108 (1992). A school district is also liable where "a school supervises and exercises control over extracurricular activities." Travis, 128 Wn. App. at 238. Here, there is no dispute that M.B. did not attend Crestline Elementary and was not under the supervision or control of Crestline Elementary at the time of the accident.

Brady relies on Chhuth v. George, 43 Wn. App. 640, 719 P.2d 562 (1986), to argue the District has a common law duty to station school patrol or traffic safety monitors "at the designated crosswalks when children would normally be present or when the cross-walks are considered within an 'active school zone.' " But the court in Chhuth did not address the existence of a common law duty to operate a school patrol.[1]

In Chhuth, a seven-year-old was fatally injured when a car hit him as he crossed the street on his way home from school. Chhuth, 43 Wn. App. at 641-42. The child's parents sued the school district and the driver of the car. Chhuth, 43 Wn. App. at 642. The parents argued the school district was negligent (1) in failing to have procedures to instruct and supervise students to use school buses, and (2) in failing to post crossing guards at the street where the child was killed when it knew there were students who did not ride the bus. Chhuth, 43 Wn. App. at 649.

---

[1] Barnes v. Bott, 571 So. 2d 183 (La. Ct. App. 1990), is also distinguishable. In Barnes, a student was killed when he crossed the street at an intersection usually supervised by a crossing guard, but the intersection was left unattended on the day of the accident. Barnes, 571 So. 2d at 184. The Louisiana court held that by participating in and accepting the benefits of a crossing guard program run by the city, "the School Board voluntarily assumed the duty of verifying that the crossing guard would be present at designated intersections during her normal duty hours." Barnes, 571 So. 2d at 186. Here, unlike in Barnes, the accident did not occur "during . . . normal duty hours."

The jury found that the driver was not negligent. Chhuth, 43 Wn. App. at 642. The jury found that the school district and the child's father were negligent but their negligence was not a proximate cause of the child's death. Chhuth, 43 Wn. App. at 642. The jury also found that the child was negligent and the child's negligence was a proximate cause of his death. Chhuth, 43 Wn. App. at 642. The trial court ruled as a matter of law that the negligence of the school district and the father proximately caused the child's death, and granted the motion for a new trial to apportion damages among the child, his father, and the school district. Chhuth, 43 Wn. App. at 642-43.

On appeal, we reversed the trial court's ruling that the negligence of the school district proximately caused the child's death because "[i]t is not possible to determine from the special verdict the basis for the jury finding that the District was negligent." Chhuth, 43 Wn. App. at 650.

> [T]he basis for the jury finding that the District was negligent. . . . could be negligent implementation and supervision of bus procedures, or breach of duty by the principal, first grade teacher or the school bus supervisor. On the other hand, the basis of negligence could have been failure to supply crossing guards. But having found negligence, and that such negligence was not the proximate cause of [the child]'s death, the jury in substance concluded [the child]'s own intervening negligence was the sole proximate cause.

Chhuth, 43 Wn. App. at 650.

Brady also contends that because the "scope of a school's legal duty" is determined by the nature of the risk, the District had a duty to operate the school patrol at the crosswalk at the time of the accident. See Travis, 128 Wn. App. at 238. But the dispositive question is the existence of a duty, not the scope of the duty.

Next, Brady contends the District breached the statute and regulations authorizing school districts to establish school patrols. See RCW 46.61.385; WAC 392-

151-020.[2] Specifically, Brady claims that the record establishes the District did not

comply with the WAC requirement to periodically review school patrol programs. WAC

392-151-020 provides, in pertinent part:

> The following suggested procedures may assist schools and employees or agents reduce the potential liability in connection with the operation of a school patrol:
> (1) Establish reasonable rules and regulations regarding the supervision and control of the school patrols.
> . . . .
> (5) Establish a policy which sets forth specific physical and other criteria for selecting school patrol members and providing adequate training.
> In addition, schools should periodically conduct a complete review of the entire school patrol program, including the following:
> (a) The selection of supervisors
> (b) The selection of student and adult members of the patrol
> (c) The training of both supervisors and patrol members
> (d) The determination of the streets which are to be used and those which are not to be used
> (e) The equipment needed
> (f) The time schedule when the patrol will be on duty
> (g) The special precautions to be observed in inclement weather and during hours of semidarkness.

Brady also cites WAC 392-151-020(5)(f) to argue that the school must establish

rules and regulations for "[t]he time schedule when the patrol will be on duty." But WAC

392-151-020 only sets forth "suggested procedures" for the operation of school patrols.

Further, WAC 392-151-020 does not address the length of time a patrol should be on

---

[2] RCW 46.61.385 states, in pertinent part:

The superintendent of public instruction, through the superintendent of schools of any school district, or other officer or board performing like functions with respect to the schools of any other educational administrative district, may cause to be appointed voluntary adult recruits as supervisors and, from the student body of any public or private school or institution of learning, students, who shall be known as members of the "school patrol" and who shall serve without compensation and at the pleasure of the authority making the appointment.

. . . .

School districts, at their discretion, may hire sufficient numbers of adults to serve as supervisors.

7

duty. Here, the undisputed evidence establishes the school patrol was on duty five minutes before dismissal at 2:50 p.m. until 3:00 p.m.[3]

In the alternative, Brady claims that the District assumed a duty to supervise the crosswalk at the time of the accident. "[L]iability can arise from the negligent performance of a voluntarily undertaken duty." Folsom v. Burger King, 135 Wn.2d 658, 676, 958 P.2d 301 (1998). Brady argues the District voluntarily agreed to supervise the crosswalk on Southeast 7th Street after the school day ended. But again, there is no dispute that the accident occurred after the school day ended and the school patrol was dismissed.

We affirm the dismissal of Brady's claims against the District.

WE CONCUR:

---

[3] Brady also asserts the District violated the requirement to adopt "[s]uggested route plans." WAC 392-151-025. Brady argues this violation is evidence of existence and breach of common law duty. Brady points to the testimony of Hite and Tichenor that neither school had a suggested route plan to argue the District violated WAC 392-151-025. But a regulation requiring the District to develop suggested walking routes is not evidence that there is a common law duty to supervise crosswalks. WAC 392-151-025 provides:

> Suggested route plans shall be developed for each elementary school that has students who walk to and from school. It shall recommend school routes based on considerations of traffic patterns, existing traffic controls, and other crossing protection aids such as school patrols. These route plans shall limit the number of school crossings so that students move through the crossings in groups, allowing only one entrance-exit from each block to and from school. The route to school plan shall be distributed to all students with instructions that it be taken home and discussed with the parents.

8