596 So.2d 1324 (1991)
Earl G. PITRE, Jr., et al., Plaintiffs-Appellants,
v.
LOUISIANA TECH UNIVERSITY, et al., Defendants-Appellees.
No. 23,074-CA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 1991.
On Rehearing April 10, 1992.
Rehearing Denied May 7, 1992.
Jones, Tete, Nolen, Hanchey, Swift & Spears by Gregory P. Massey, Lake Charles, for appellants.
Hudson, Potts & Bernstein by W. Craig Henry, Monroe, for appellee.
Before SEXTON, LINDSAY and BROWN, JJ.
LINDSAY, Judge.
The plaintiff, Earl G. Pitre, Jr. was injured in a sledding accident on campus *1325 while a student at Louisiana Tech University. The plaintiff and his parents, Earl G. Pitre, Sr. and Joan Pitre, filed suit against the defendants, Louisiana Tech University and the State of Louisiana, through the Board of Trustees for State Colleges and Universities, for damages and loss of consortium. The defendants, as well as the plaintiffs, filed motions for summary judgment. The trial court denied plaintiffs' motion for summary judgment. However, the trial court sustained the defendants' motion for summary judgment and dismissed the plaintiffs' suit. The plaintiffs have appealed. For the following reasons, we affirm the trial court judgment.

FACTS
In early January, 1988, a snow and ice storm occurred in northeast Louisiana which affected the Louisiana Tech campus in Ruston. On the evening of January 7, 1988, Earl Pitre, Jr., along with numerous other students, engaged in sledding down a hill close to the Thomas Assembly Center on campus. The hill was approximately 85 feet high, measuring from its crest to the bottom. The hill led down to the parking lot of the Thomas Assembly Center. The parking lot measured 143 feet from the grass at the bottom of the hill to a line of large light posts encased in concrete used to illuminate the parking lot. The lights were spaced approximately 150 feet apart.
Students were using homemade sleds, pieces of cardboard and trash can lids for sledding. The students would sled down the hill and into the parking lot which was covered with ice. Mr. Pitre had sledded down the hill several times prior to his accident.
When the accident occurred, Mr. Pitre rode down the hill head first, lying on his back on a large trash can lid, accompanied by several other persons. The group struck one of the light posts in the parking lot and Mr. Pitre injured his spinal column. He is now paralyzed from approximately the mid-chest down.
In their suit, the plaintiffs contend that the defendants were negligent in several respects. The campus housing authority issued a bulletin to all students regarding activities during winter storms. This bulletin stated that sledding was permitted except around the Tech Drive area, due to the vehicle traffic in that location. The plaintiffs argue that the defendants were negligent in failing to prohibit sledding around the Thomas Assembly Center and in failing to warn of the hazards of sledding in that area. They further allege that the defendants were negligent in encouraging sledding in areas known to be hazardous and in failing to erect cushions around the base of the light posts in the parking lot.
On November 28, 1990, the defendants filed a motion for summary judgment. The defendants contended that the presence of the light posts in the parking lot was easily observable in the exercise of reasonable care and that because the presence of the posts was as obvious to Earl Pitre, Jr., as to the defendants, the defendants had no duty to warn of the existence of this condition.
On December 5, 1990, the plaintiffs filed a motion for partial summary judgment. The plaintiffs argued that the defendants failed to take precautions to prohibit sledding near the Thomas Assembly Center. They also argued that the defendants owed a duty to the plaintiff to warn of the danger involved in sledding near the Thomas Assembly Center, an area which was unreasonably dangerous to persons who thought they were engaging in University sanctioned sledding activities. The plaintiffs also argued that the defendants owed a duty to make the area safe for sledding after representing to the students that the area was safe. The plaintiffs contend the defendants should have had cushioning around the base of the light post. Therefore, the plaintiffs contended that because the defendants clearly breached a duty to Earl Pitre, Jr., the plaintiffs were entitled to a partial summary judgment finding liability on the part of the defendants, leaving *1326 for trial only the amount of damages and the plaintiff's comparative negligence.
The trial court granted the defendants' motion for summary judgment, dismissing the plaintiffs' demands with prejudice. In reasons for judgment, the trial court found that there were no disputed issues of material fact and therefore the question was whether either the plaintiffs or the defendants were entitled to judgment as a matter of law.
The trial court based its finding on an analysis of whether Louisiana Tech owed a duty to Earl Pitre, Jr. which encompassed the risk he encountered. The trial court noted that the plaintiffs contended that the defendants should have put cushions around the light posts in the parking lot. The court then examined whether the uncushioned light post represented an unreasonable risk of harm that the University had a duty to protect against. The trial court found that because the area was well-lit and the light post was easily visible, the defendants had no duty to cushion the light post.
The court then addressed the plaintiffs' argument that the defendants had a duty to warn. In this case, the trial court found there was no such duty. The court reasoned that a landowner is not liable where the injured party had knowledge of the potential danger and did not act reasonably to prevent the harm. The court then found that the consequences and likelihood of striking the light post were readily apparent to the plaintiff.
The court also found there was no duty to totally prohibit sledding, reasoning that such a duty would require the defendants to renounce and prohibit every imaginable act which might bring harm to a student and that the defendants could not be held responsible in every case where a student is injured by his own bad judgment.
The trial court found that the defendants were not negligent in the issuance of the bulletin to the students. The court found that this did not create an affirmative duty to warn against every known risk of harm associated with sledding. The court stated that the risks of harm were or should have been apparent to all potential sledders.
The plaintiffs appealed the trial court judgment. The plaintiffs argue that the trial court erred in granting the defendant's motion for summary judgment and erred in denying their own motion for partial summary judgment.

SUMMARY JUDGMENT
In their first two assignments of error, the plaintiffs argue that the trial court erred in granting the defendants' motion for summary judgment. The plaintiffs contend the trial court erred in failing to construe the pleadings, affidavits, depositions and other evidence in the light most favorable to the party opposing the motion for summary judgment, in this case, the plaintiffs. Rather, the plaintiffs argue that the trial court construed the evidence in the light most favorable to the defendants. The plaintiffs next argue the trial court erred in finding that the defendants owed no duty to the plaintiff, Earl Pitre, Jr. Because these assignments of error are interrelated, they will be considered together.
Motions for summary judgment are governed by LSA-C.C.P. Art. 966 which provides, in pertinent part:
A. The plaintiff or defendant in the principal or incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
B.... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.
*1327 Upon trial of the motion for summary judgment, the burden rests upon the mover to show convincingly that there exists no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. Ledbetter v. Myers, 438 So.2d 700 (La.App. 2d Cir.1983).
Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Ledbetter v. Myers, supra; Burke v. Occidental Life Insurance Company of California, 427 So.2d 1165 (La. 1983).
A summary judgment is not appropriate where the trier of fact must weigh conflicting evidence in order to reach a conclusion upon which reasonable men could differ. Sanders v. City of Blanchard, 438 So.2d 714 (La.App. 2d Cir.1983).
When the evidence submitted on the motion leaves no relevant genuine issue of fact, and when reasonable minds inevitably conclude that the mover is entitled to judgment on the facts before the court, the motion for summary judgment should be granted. Fox v. Board of Supervisors of Louisiana State University, 559 So.2d 850 (La.App. 1st Cir.1990), affirmed 576 So.2d 978 (La.1991).
Even if there is no genuine issue of material fact, summary judgment is improper if the mover is not entitled to judgment as a matter of law. Credithrift of America, Inc. v. Williams, 426 So.2d 339 (La.App. 2d Cir.1983).
In this case, the plaintiffs contend that the defendants owed a duty to Earl Pitre, Jr. to warn of the dangers of sledding or to act to prohibit sledding at Thomas Assembly Center. They also contend that there is a genuine issue of material fact regarding the degree of fault to be assessed to each party.
However, we agree with the trial court that the facts surrounding the plaintiff's accident are not disputed. The plaintiffs and defendants submitted numerous depositions, affidavits, and exhibits regarding the accident. The evidence presented shows that when the winter storm moved into the Louisiana Tech area, the housing office distributed a bulletin entitled "Winter Storms and Louisiana Tech." Generally, the bulletin offered tips on driving, walking and dressing in winter weather. It had a "tongue in cheek" tone, but was obviously designed to remind students to use good judgment while engaging in winter activities. One paragraph provided:
We encourage snowmen, sledding, etc. in proper areas and using good judgment. We discourage sledding down the hills along Tech Drive into the path of oncoming carsnot good judgement [sic]nor is being dragged behind a moving vehicle considered using good judgement [sic]. Fifteen reported personal injuries were associated with such behavior during the last snow.
However, contrary to the tenor of the bulletin, depositions and affidavits by several members of the Louisiana Tech campus police established that not only was sledding prohibited in the Tech Drive area, which was barricaded, but that if officers saw students sledding in any other areas the students were asked to stop and to leave the area.
At the time the plaintiff was injured, 50 or more students were gathered at the hill near Thomas Assembly Center. These students were sledding and socializing. Several students stated that they were not aware of the winter storm bulletin before they went to the area to sled. Earl Pitre, Jr. said that he read the bulletin before he went sledding but that the bulletin did not really play a part in his decision to go sledding.
Numerous students who were present at the time of the accident were deposed. They all stated that they did not know that sledding at the Thomas Assembly Center was prohibited by Campus Police and that if they had been so informed they would *1328 have complied with the police department wishes. However, Officer Dowda of the campus police stated that he directed students away from the Assembly Center twice on the date of the accident, telling them that they might be injured by hitting the light posts.
The evidence showed that many of the students, including the plaintiff, had sledded down the hill numerous times prior to the accident. The evidence indicated that among the various devices used for sledding, the garbage can lid went the farthest distance down the hill and into the parking lot. Pictures of the scene also show that the large lights in the parking lot were clearly visible.
The plaintiffs also presented the deposition of Dan Corbin, from Purdue University, who held a PhD in recreational leadership. Mr. Corbin was familiar with cold weather sports and examined the hill at Thomas Assembly Center where the accident occurred. Mr. Corbin stated that Louisiana Tech could have made the area safer for sledding by putting something around the base of the lights to cushion impact. Further, the defendants could have barricaded the area and/or placed warning signs there to indicate that sledding was not permitted on the hill.
There is no disputed issue of material fact surrounding the occurrence of this accident. It is not disputed that the housing office distributed a winter storm bulletin which encouraged sledding with the use of good judgment, except in the Tech Drive area where sledding was prohibited. It is not disputed that campus security had an unwritten policy of prohibiting sledding at all areas of the campus. Also, it is not disputed that numerous students were unaware of any prohibition against sledding at Thomas Assembly Center at the time this accident occurred.
The only issue is whether the defendants owed a duty to the plaintiff which was breached. If no duty was owed, as was found by the trial court, then the defendants were entitled to summary judgment as a matter of law.
The existence of duty is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Generally, duty is defined as the obligation to conform to the standard of conduct associated with a reasonable man in like circumstances. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. Fox v. Board of Supervisors of Louisiana State University, supra.
In cases where negligence is alleged, the duty risk analysis is helpful in determining liability. For liability to attach, the plaintiff must establish that:
1. The conduct in question was a cause in fact of the resultant harm;
2. The defendant owed a duty to the plaintiff;
3. The duty owed was breached, and;
4. The risk or harm caused was within the scope of the breached duty.
Fox v. Board of Supervisors of Louisiana State University, supra; Barnes v. Bott, 571 So.2d 183, (La.App. 4th Cir.1990) writ denied 573 So.2d 1141 (La.1991); Ladner v. Fireman's Insurance Company of Newark, 519 So.2d 1198 (La.App. 2d Cir. 1988).
The plaintiffs argue that even though the light post was visible, the defendants had a duty to eliminate the unreasonable risk of harm which befell Earl Pitre, Jr. The plaintiffs argue that the defendants had superior knowledge regarding the hazards of such activities and should have placed cushioning around the light posts, or should have barricaded the areas that could have been used for sledding, as well as stationing more campus security officers in the area to prevent students from sledding. The plaintiffs also argue that even if no duty existed, the defendants assumed the duty to protect against the dangers of sledding when campus police adopted a policy to prohibit sledding wherever it was encountered. *1329 The plaintiffs argue that the defendants had a duty to warn or protect against the dangers encountered by Earl Pitre, Jr. These arguments are meritless.
The light post that Earl Pitre, Jr. sledded into was clearly visible. A landowner will not be held liable for an injury resulting from a condition which should have been observed by an individual in the exercise of reasonable care or which was as obvious to the visitor as to the landowner. Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976). When a dangerous condition is patently obvious and easily avoidable, it can hardly be considered to present a condition creating an unreasonable risk of harm. Guillory v. Audubon Insurance Company, 417 So.2d 892 (La. App. 3d Cir.1982); Dickson v. Wal-Mart Stores, Inc., 535 So.2d 800 (La.App. 2d Cir.1988).
Therefore, because the light pole was visible, the trial court was correct in finding that the uncushioned light post did not present an unreasonable risk of harm that the defendants had a duty to protect against.
In seeking to establish liability on the part of the defendants, the plaintiffs argue that under Harris v. Pizza Hut of Louisiana, Inc., supra, and Barnes v. Bott, 571 So.2d 183 (La.App. 4th Cir.1990), writ denied 573 So.2d 1141 (La.1991), the defendants, through the campus police, assumed the duty of protecting against sledding. Both cases held that a duty of protection which has been voluntarily assumed must be performed with due care. However, those cases dealt with the hiring of security guards to protect against dangers from third persons. Those cases are not applicable to a situation such as that presented here which deals with a readily observable danger which the plaintiff could have prevented through the exercise of due care. Any danger involved in sledding in this case was as readily apparent to the plaintiff and the other students as it was to the university. Under the circumstances, we are not persuaded that the risk of injury from striking fixed objects while sledding created a duty upon the campus police or the administration of Louisiana Tech to prevent it.
The plaintiffs also contend that the defendants had a duty to warn of the dangers associated with sledding. The plaintiffs argue that Socorro v. City of New Orleans, 579 So.2d 931 (La.1991) is factually similar to the present case and supports the argument that the defendants in this case had a duty to warn. In Socorro, the plaintiff dove from the bulkhead at Breakwater Point into Lake Pontchartrain and struck a submerged object. The plaintiff suffered permanent quadriplegia. In Socorro, the city had placed signs warning against diving and swimming in various points around the lake but there were no signs at the point where the plaintiff was swimming. The court found that there were not sufficient warning signs in the particular area and found the City of New Orleans to be 25 percent at fault in the plaintiff's accident.
Based on the holding in Socorro, the plaintiffs argue that Louisiana Tech should be held liable for failure to warn of the dangers of sledding. We find that the facts of the present case are distinguishable from those of Socorro. In Socorro, a material known as rip rap was placed on the lake bottom to prevent erosion. At the point where the plaintiff dove into the lake, the lake was very shallow. The rip rap was not visible and the water appeared to be dark and deep. There was no warning to alert swimmers that the water was shallow. In the present case, the light post encountered by the plaintiff was clearly visible and was in no way hidden from him. Therefore, there was no duty to warn of the obvious position of the light post.
The trial court was correct in finding that the defendants owed no duty to warn the plaintiff, Earl Pitre, Jr. We find, as did the trial court, that the issuance of the winter storm bulletin did not create an affirmative duty to warn of every known *1330 risk associated with sledding when those risks were readily apparent. The plaintiff was a 20-year-old college student at the time of the accident. He knew of the icy and snowy conditions on the campus. Regardless of any arguments that may be made concerning statements in the winter storm bulletin issued by the housing office, the plaintiff chose of his own free will to go sledding. Further, he chose to sled down a hill and into the parking lot of the Thomas Assembly Center. The plaintiff could readily observe that the parking lot had large light posts encased in cement. Also, he had been on the scene long enough to observe that students sledding on some devices, including the trash can lid, were traveling down the hill into the parking lot and sometimes beyond the area where the lights were located. Mr. Pitre then chose to lie down on his back in the trash can lid, which could not be steered, and sledded down the hill into the parking lot, head first. Under these circumstances, in which the dangers and risks were obvious, the defendants owed no duty to Mr. Pitre.

MOTION FOR PARTIAL SUMMARY JUDGMENT
The plaintiffs argue that the trial court erred in failing to grant their motion for partial summary judgment. The plaintiffs asserted that the defendants owed a duty to Earl Pitre, Jr., which was breached and therefore the only issue left for decision was the degree of negligence of each party. Because we find that the defendants owed no duty to protect Earl Pitre, Jr. against this obvious risk and because we affirm the motion for summary judgment in favor of the defendants, we do not reach this issue.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment granting summary judgment in favor of the defendants, Louisiana Tech University and the State of Louisiana, through the Board of Trustees for State Colleges and Universities, and dismissing the claim of the plaintiffs, Earl G. Pitre, Jr., Earl G. Pitre, Sr., and Joan Pitre. Costs are assessed to the plaintiffs.
AFFIRMED.
BROWN, J., dissents with written reasons.
BROWN, Judge, dissents.
Plaintiff, a 20 year old resident student at Louisiana Tech, was seriously injured while participating in an on-campus activity. There is no question that the activity in fact caused plaintiff's harm. Both parties filed summary judgment motions. The issue presented by defendants' motion was whether plaintiff could articulate a general rule or principle of law, either statutory or jurisprudential, that protected his interest from this type of harm arising in this manner. If so, then plaintiff's motion contended that no real issue of fact regarding defendants' breach of this duty existed.
The majority's finding that no duty was owed to plaintiff because the potential danger was visible and the conditions were obvious appear to be addressing comparative fault. Whether a duty existed is a question of law while its breach and the partial defense of comparative negligence are fact issues.
The concentration of young people on a college campus creates conditions that can cause injuries. Therefore, colleges have enacted many rules and regulations to protect its students. A college has a special relationship with its resident students which obligates it to take reasonable and necessary steps to protect their safety from foreseeable harm. Due to changes in lifestyles students take more responsibility for their actions and a college may not now stand in loco parentis to its students. The inability of a college, however, to totally control the activities of its resident students does not entitle it to abandon any effort to insure their physical safety. Parents, students and the general community still appropriately have expectations that *1331 reasonable care will be exercised by colleges to protect resident students from foreseeable harm. Such expectations are fostered in part by the colleges themselves in their recruiting practices. For financial reasons colleges desire students to fill its dormitories and advertise the safety of their campuses. College administrators know that a 20 year old may be an adult legally, but normally lacks the experience to understand adulthood.
In this case Louisiana Tech recognized its duty and did foresee possible harm to its resident students from sledding. The Housing Department issued a bulletin regulating sledding by prohibiting it in the Tech Drive area and encouraging and directing it to the remaining appropriate location, the Thomas Assembly Center. This bulletin was placed on the bed of every dormitory student. Plaintiff resided in a dormitory and received the bulletin.
The bulletin encouraging sledding was issued despite this activity's perceived and known danger. The bulletin itself recognized the past history of injuries from this activity. The Tech Security Police absolutely prohibited sledding anywhere on campus because in their opinion it was inherently dangerous. The Security Police's opposition to sledding and the Housing Department's encouragement with a warning of care demonstrated their cognizance of its dangers.
Although the light posts were clearly visible they were considered by students to be out-of-range when sledding off the Thomas Assembly Center hill. This belief, coupled with the bulletin, created an illusion of safety. The security police, however, considered the light posts a danger.
The majority's opinion that "... because the light pole was visible ... (it) did not present an unreasonable risk of harm ..." and "... there was no duty to warn of the obvious position of the light post ..." is an attempt to define defendants' initial duty in terms of plaintiff's actual knowledge. Such an attempt seeks to achieve the same result as the old doctrine of assumption of risk which was replaced by the comparative fault system. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991); Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La. 1988).
The reasoning of the majority opinion was rejected by the Supreme Court in Murray, supra, which held:
... Defendants suggest that, leaving aside the doctrine of assumption of risk, they should not be liable because they had no duty to protect the decedent from a danger of which he had knowledge. In essence, defendants contend here that they were not negligent because the plaintiff voluntarily encountered the risk.... If accepted, defendants' argument would inject the assumption of risk doctrine into duty/risk analysis `through the back door'. By that, we mean that the argument attempts to define the defendant's initial duty in terms of plaintiff's actual knowledge, and hereby seeks to achieve the same result which would be reached if assumption of risk were retained as a defense, i.e., a total bar to the plaintiff's recovery.
Under these circumstances a duty did exist requiring Louisiana Tech to act reasonably to protect plaintiff's interest against this foreseeable harm. Instead, Tech created an illusion of safety which strongly supports plaintiff's motion for summary judgment; however, whether this duty was breached was a genuine issue of fact, as was plaintiff's comparative fault. Thus, summary judgment was not proper in this case.
I respectfully dissent.
Before SEXTON, NORRIS, LINDSAY, BROWN and STEWART, JJ.

ON REHEARING
BROWN, Judge.
In this action by a college student to recover for injuries arising out of an on-campus activity, we granted a rehearing to *1332 reconsider the trial court's determination by summary judgment that Louisiana Tech University owed no duty to this student. We now determine that the trial court erred in finding that no duty existed and reverse the summary judgment granted in favor of the university.
Tech is a state university located at Ruston in the gentle hills of north Louisiana. Plaintiff, Earl G. Pitre, Jr., was a 20 year old resident student at Tech from south Louisiana. In January 1988 a snow and ice storm caused classes to be cancelled and limited the movement of many resident students to campus. On the night of January 7, 1988 plaintiff joined with other students in sledding down the hill at the Thomas Assembly Center. The bottom of the hill leveled off into the parking lot of the football stadium. Widely spaced in the parking lot were light poles which provided illumination for the area. The bottom of each light pole was encased in concrete. The closest light pole was 143 feet from the bottom of the hill. Plaintiff, with three other students, rode a large trash container lid down the hill. Tragically the lid hit the base of a light pole resulting in injuries to plaintiff which rendered him paraplegic for life.
Plaintiff and his parents sued Tech and the State of Louisiana. All parties moved for summary judgment on the question of liability. The evidence submitted with the summary judgment motions included a bulletin issued by the Tech Housing Office which "encouraged" sledding on some campus hills; specifically, "we encourage ... sledding ... in proper areas ... we discourage sledding down the hills along Tech Drive into the path of oncoming cars...." The hill at the Thomas Assembly Center was not on Tech Drive and was a popular location for sledding.
The bulletin established Tech's knowledge of the general risk of injuries related to sledding, stating that:
... Fifteen reported personal injuries were associated with such behavior (sledding) during the last snow.
On the other hand, Tech's Security Police prohibited sledding anywhere on-campus. The Security Police believed that sledding off the hill at the Thomas Assembly Center was hazardous because of the specific danger of striking a light pole in the parking lot. The policy of the Security Police was to order students to stop sledding whenever an officer observed this activity.
The trial court determined that Tech owed no duty to protect plaintiff from his voluntary actions because the danger presented by the light pole was obvious. On rehearing we find this analysis and conclusion legally unsound.
A landowner or custodian owes a duty to a plaintiff to discover any unreasonably dangerous condition or use of its premises and to either correct the condition or warn of its existence. Socorro v. City of New Orleans, 579 So.2d 931 (La.1991).
In addition to this general duty of a landowner or custodian, Tech had a duty arising out of its relationship with plaintiff as a resident student. Universities guide many aspects of student life by undertaking to provide food, housing, security and a wide range of extracurricular activities. In attempting to regulate the conduct of its students, Tech was obligated to take some reasonable and necessary steps to protect these students from foreseeable harm. Fox v. Bd. of Sup'rs of La. State Univ., 576 So.2d 978 (La.1991), stated: "... L.S.U. must ensure that its premises are free from defects and are suitable for activities conducted there." Other states have recognized this obligation. Mullins v. Pine Manor College, 389 Mass. 47, 449 N.E.2d 331 (1983); Furek v. University of Delaware, 594 A.2d 506 (Del.1991). Adult students, of course, must similarly be held responsible for their own conduct. The impracticality of total control of on-campus activities does not entitle universities to abandon all efforts to insure the physical safety of its students. Parents, students and the general community have some expectations that reasonable care will be exercised *1333 by universities to protect students from foreseeable harm.
A method of analysis that focuses solely on plaintiff's knowledge and conduct to conclude that the defendant owed no duty has been rejected by our Supreme Court.
... Defendants suggest that, leaving aside the doctrine of assumption of risk, they should not be liable because they had no duty to protect the decedent from a danger of which he had knowledge. In essence, defendants contend here that they were not negligent because the plaintiff voluntarily encountered the risk.... If accepted, defendants' argument would inject the assumption of risk doctrine into duty/risk analysis `through the back door'. By that, we mean that the argument attempts to define the defendant's initial duty in terms of plaintiff's actual knowledge, and thereby seeks to achieve the same result which would be reached if assumption of risk were retained as a defense, i.e., a total bar to the plaintiff's recovery.
Socorro v. City of New Orleans, supra, quoting from Murray v. Ramada Inns Inc., 521 So.2d 1123 (La.1988). Socorro, however, left open the possibility that on the right facts, after a proper duty/risk analysis, a condition may be found so obvious that it is not unreasonably dangerous.
In the instant case, Tech knew that its students would be utilizing this area for sledding. Through its Security Police, Tech knew of the specific danger presented by the light poles when sledding off the hill at the Thomas Assembly Center. Despite that knowledge, Tech's Housing Office "encouraged" this 20 year old student who had no prior experience with this uncommon activity to undertake the risk. An illusion of safety was created by Tech which removed or lessened this student's reality of the actual danger. Under the totality of these circumstances, this activity presented an unreasonable risk of injury to plaintiff.
The potential risks could have been easily and economically removed or reduced by placing signs at the top of the hill prohibiting sledding or specifically warning of the light poles or by using barricades commonly associated with parking lots to channel sledders away from the light poles. Further, the concrete encased poles could have been cushioned with bales of hay or similar materials.
We find that the risk of injury from sledding into a light pole was easily associated with the duty to protect or warn. The remedy was not costly or difficult.
Arising out of its ownership or custody of the land and because of its relationship with plaintiff, Tech had a duty to protect or warn against this unreasonably dangerous activity. The trial court erred in determining by summary judgment that Tech owed no duty to protect plaintiff against this risk of harm.

DECREE
The judgment of the trial court granting summary judgment in favor of defendants is REVERSED at defendants' costs. This matter is REMANDED for further proceedings.
LINDSAY, J., dissents with reasons.
SEXTON, J., dissents for the reasons assigned by LINDSAY, J.
LINDSAY, Judge, dissenting.
The majority opinion on rehearing in this case finds that Louisiana Tech University owed a duty to warn the plaintiff of the dangers of sledding and owed a duty to act to protect against sledding. The opinion goes on to state that the failure to take precautions to protect the plaintiff from this danger constituted negligence.
The majority opinion makes the defendants the insurer of the safety of the students. Jurisprudence from other jurisdictions shows that colleges and universities no longer stand in loco parentis to their students. The university is not the insurer of its students' safety. See University of *1334 Denver v. Whitlock, 744 P.2d 54 (Colo. 1987), and cases cited therein; Beach v. University of Utah, 726 P.2d 413 (Utah 1986).
In Socorro, referred to in the majority opinion, the Supreme Court held that the plaintiff's knowledge and conduct are, indeed, properly considered in determining the existence of a defendant's duty. Duty is not to be analyzed in a vacuum. In Socorro, supra, the Supreme Court clearly stated:
... [c]are should be taken to note that we maintain our policy that "the duty which a landowner owes to persons entering his property is governed by a standard of reasonableness, and that a potentially dangerous condition that should be obvious to all comers is not, in all instances, unreasonably dangerous." Murray, 521 So.2d at 1136 (citing Shelton, [v. Aetna Cas. & Sur. Co.], 334 So.2d [406] at 410 [ (La.1976) ]). Therefore, under a duty/risk analysis, if the facts of a particular case warrant, there could be a finding that a defendant owed no duty under the circumstances.....
The majority opinion in the instant case makes passing reference to the above quoted principles, but fails to apply them and, for all practical purposes, finds liability on the part of the defendants. Here, the plaintiff, a college student, chose to sled down a hill, head first, into a parking lot containing several large and clearly visible light posts. The danger was minimal. There may have been a risk of harm, but there was no unreasonable risk of harm. Any danger which existed was clearly obvious to "all comers," Socorro, and was certainly obvious to the plaintiff. Under these circumstances, I do not find that the defendant owed or breached any duty owed to the plaintiff.
For the reasons stated in the majority opinion on original hearing, I believe the trial court was correct in granting the defendant's motion for summary judgment and dismissing the plaintiff's suit. Accordingly, I respectfully dissent.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, LINDSAY, BROWN and STEWART, JJ.
Rehearing denied.